2005 UT App 446

**Patrick T. PANOS, Plaintiff
and Appellant,**

v.

**OLSEN AND ASSOCIATES CONSTRUC-
TION, INC., a Utah corporation, De-
fendant and Appellee.**

No. 20040716–CA.

Court of Appeals of Utah.

Oct. 20, 2005.

Rehearing Denied Dec. 7, 2005.

Thor B. Roundy, Salt Lake City, for Appellant.

F. Lavar Christensen, Draper, and Patrick V. Lindsay, Provo, for Appellee.

Before Judges BILLINGS, BENCH, and THORNE.

## OPINION

BENCH, Associate Presiding Judge:

¶1 Appellant Patrick T. Panos challenges both the trial court's grant of summary judgment in favor of appellee Olsen and Associates Construction, Inc. (Olsen) and the denial of Panos's cross-motion for summary judgment. Panos contends that the home built on the Olsen's lot exceeds the thirty-two foot height restriction in the warranty deed.[1] Panos asserts that summary judgment was improper because the merger doctrine does not apply to the deed as a matter of law. He

---

1. Jay Olsen is the President and sole shareholder of Olsen and Associates Construction, Inc. Panos conveyed Lot 29 to this corporation, and Jay Olsen thereafter built a home on the lot.

argues that the deed contains a latent ambiguity and a mutual mistake because it does not reference a specific point on the street where the height restriction measurement must originate. Panos also argues that the deed should be reformed because of a mutual mistake. We reject these arguments and affirm.

## BACKGROUND

¶ 2 In July 2001, Panos sold Olsen a vacant lot (Lot 29) in Sandy, Utah. Panos continued to own and reside in his home on Lot 24, which is adjacent and southeast to Lot 29. At the time of sale, the parties entered into a real estate purchase contract. The contract included addenda that detailed several additional terms and restrictions, including a prohibition against any building on the lot higher than thirty-two feet when measured "from the road." Panos asserts that the purpose of the height restriction was to preserve his unobstructed view from his property.

¶ 3 At closing, Panos signed a warranty deed granting Olsen title to Lot 29. The deed contained language relating to the height restriction: "SUBJECT TO THE FOLLOWING BUILDING RESTRICTIONS: THE ROOF LEVEL OR HIGHEST PROTION [sic] OF ANY BUILDING OR PERMANENT STRUCTURE PLACED OR CONSTRUCTED UPON SAID LAND SHALL NOT BE HIGHER THAN 32 FEET. MEASURED FROM THE EXISTING STREET LYING WEST AND ADJACENT TO SAID LAND." No other specifications were contained in the deed concerning the height restriction. The

road lying west and adjacent to Lot 29 is a portion of Elm Ridge Road. The road runs north to south and is sloped in that direction. As a result, height measurements from the road vary depending on the starting point.

¶ 4 About a year before Panos sold Lot 29, he ordered a survey of both Lots 29 and 24 (Panos survey). He ordered the survey to determine, inter alia, the greatest height at which a potential home could be built upon Lot 29 so as to preserve his view. The Panos survey measured from a base point at the Salt Lake County brass cap monument (monument), lying southwest of Lot 29 on Elm Ridge Road. Panos contends that the monument must be the starting point for any height measurements in the deed.

¶ 5 The parties dispute whether the Panos survey was provided to Olsen and also whether they agreed that the monument would be the starting point for measuring the height restriction. Although Panos alleges that his survey and measurement from the monument were critical and specifically discussed by the parties, neither the deed nor the contract reference the monument or any other specific point for measuring the height restriction.

■ ¶ 6 After closing, Olsen began construction of a home. When it was completed, the Panos survey was updated to include elevation information of the Olsen home, measured from the monument. The updated Panos survey indicated that the newly constructed Olsen home was approximately 34.91 feet above the monument, in violation of the height restriction by 2.91 feet.[2]

---

2. Panos also alleges that there are several objects protruding from the roof, including a swamp cooler and a large pipe, extending another 20 inches above the roof and resulting in a total height of 36.58 feet from the monument. Unfortunately, Panos has not provided any deposition testimony, affidavits, interrogatories or other admissible evidence to support his allegations. Rule 56(e) of the Utah Rules of Civil Procedure states that:

> When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of the pleadings,* but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

> Summary judgment, if appropriate, shall be entered against a party failing to file such a response.

Utah R. Civ. P. 56(e) (emphasis added). To defeat a motion for summary judgment, the allegations contained in the pleadings must be "admissible in evidence." *Id.* This evidence may be submitted in the form of "depositions, answers to interrogatories, or further affidavits," thereby "showing that there is a genuine issue for trial." *Id.* Statements that are "not … admissible in evidence … may not be considered on summary judgment under Rule 56(e)." *Norton v. Blackham,* 669 P.2d 857, 859 (Utah 1983). As a result, we do not discuss Panos's claims regarding the alleged protrusions.

¶ 7 Olsen hired David Jenkins, an engineer, to conduct a survey (Olsen survey) of the Olsen home to determine whether it was in compliance with the height restriction. Jenkins used a point on the street gutter, near the northwest corner of Lot 29 on Elm Ridge Road, to measure the height restriction. The gutter point utilized in the Olsen survey is higher in elevation than the monument utilized in the Panos survey. As a result, Jenkins found the Olsen home to be only 31.96 feet high and, therefore, in compliance with the height restriction.

¶ 8 Based on the Panos survey, Panos filed a complaint alleging breach of contract, seeking an injunction, and requesting a declaratory judgment. Olsen filed a motion for summary judgment, arguing that the merger doctrine applies to the deed and that the Olsen home is in compliance based on the Olsen survey. In response, Panos filed a cross-motion for summary judgment, arguing that the Olsen home is in violation of the height restriction based on the Panos survey. The trial court granted Olsen's motion for summary judgment and denied Panos's cross-motion for summary judgment, ruling that the merger doctrine applies and that the Olsen home satisfies the height restriction specified in the deed.

¶ 9 Thereafter, Panos filed a rule 60(b) motion to amend the trial court's judgment. *See* Utah R. Civ. P. 60(b). The trial court denied the motion. Panos now appeals the entry of summary judgment in favor of Olsen and the denial of his cross-motion for summary judgment.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Panos argues that the trial court erred in granting Olsen's motion for summary judgment and in denying Panos's cross-motion for summary judgment. "In reviewing a grant of summary judgment, this court views the facts in a light most favorable to the losing party below...." *Goodnow v. Sullivan*, 2002 UT 21, ¶ 7, 44 P.3d 704 (citation and quotations omitted). "We review a summary judgment determination for correctness, granting no deference to the [district] court's legal conclusions. We determine only whether the [district] court erred in applying the governing law and whether the [district] court correctly held that there were no disputed issues of material fact." *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 15, 116 P.3d 271 (alterations in original) (citations and quotations omitted); *see also* Utah R. Civ. P. 56(c).

## ANALYSIS

### I. Merger Doctrine

¶ 11 In determining the nature and content of the parties' agreement, the trial court determined that the merger doctrine applies to the contract and the deed. We agree. Under the merger doctrine, a deed is the final, integrated agreement of the parties and it abrogates all prior agreements, whether written or oral. *See Maynard v. Wharton*, 912 P.2d 446, 449–50 (Utah Ct.App. 1996); *Verhoef v. Aston*, 740 P.2d 1342, 1344 (Utah Ct.App.1987) ("[A] basic tenet of contract law is that prior negotiations and agreements merge into the final written agreement on the subject.").

¶ 12 The Utah Supreme Court has explained the doctrine of merger as follows:

The doctrine of merger ... is applicable when the acts to be performed by the seller in a contract relate only to the delivery of title to the buyer. Execution and delivery of a deed by the seller then usually constitute full performance on his part, and acceptance of the deed by the buyer manifests his acceptance of that performance even though the estate conveyed may differ from that promised in the antecedent agreement. Therefore, in such a case, the deed is the final agreement and all prior terms, whether written or verbal, are extinguished and unenforceable.

*Stubbs v. Hemmert*, 567 P.2d 168, 169 (Utah 1977) (footnotes omitted); *see also Secor v. Knight*, 716 P.2d 790, 793 (Utah 1986). The merger doctrine is "an admittedly harsh rule of law." *Secor*, 716 P.2d at 794. We adhere to the merger doctrine because it "preserves the integrity of the final document of conveyance and encourages the diligence of the parties." *Id.* at 795. Parties to real estate transactions have a duty "to make certain

that their agreements have in fact been fully included in the final document," *id.*, and that "any agreements involving conveyance [or encumbrance] of title are incorporated into the final closing document, which is usually a warranty deed," *Maynard,* 912 P.2d at 451.

¶ 13 In this matter, the height restriction specified in the deed is the final, integrated agreement of the parties. Panos, however, relies upon two exceptions to the merger doctrine: ambiguity and mutual mistake. Panos contends that parol evidence, including the parties' prior discussions, must be considered in construing the deed. Such parol evidence allegedly includes the parties' agreement that the height restriction measurement would originate from the monument, not the gutter.

## II. Merger Doctrine Exceptions

¶ 14 Under Utah law, the "merger doctrine has four discrete exceptions: (1) mutual mistake in the drafting of the final documents; (2) ambiguity in the final documents; (3) existence of rights collateral to the contract of sale; and (4) fraud in the transaction." *Id.* at 450. Panos only contends that two exceptions apply: (1) ambiguity and (2) mutual mistake. We hold that neither exception applies in this case.

### A. Ambiguity

¶ 15 Panos asserts that the deed contains a latent ambiguity, in that the deed does not indicate the precise location from which to measure the height restriction. "Deeds are construed according to ordinary rules of contract construction." *Homer v. Smith,* 866 P.2d 622, 629 (Utah Ct.App.1993). "Whether a contract is ambiguous is a question of law." *Village Inn Apts. v. State*

Farm Fire & Cas. Co., 790 P.2d 581, 582 (Utah Ct.App.1990). We interpret contract terms "in accordance with their plain and ordinary meaning" within the four corners of the document. *Id.* at 583 (citation and quotations omitted).[3] In interpreting the deed, "[i]t is the court's duty to construe a deed *as it is written,* and ... in the light of its own language and peculiar facts." *Hartman v. Potter,* 596 P.2d 653, 656 (Utah 1979) (emphasis added). As a result, "where a deed is plain and unambiguous, parol evidence is not admissible to vary its terms." *Id.* In respect to the rules of contract construction concerning property, "the courts will resolve all doubts in favor of the free and unrestricted use of property." *Freeman v. Gee,* 18 Utah 2d 339, 423 P.2d 155, 159 (1967).

¶ 16 Without a specific reference point where the measurement must originate, Panos claims that the height restriction is ambiguous because the words used "may be understood to reach two or more plausible meanings." *Crowther v. Carter,* 767 P.2d 129, 131 (Utah Ct.App.1989) (citation and quotations omitted). As Elm Ridge Road is sloped, measurement taken from the higher portion of the road would result in the Olsen home being in compliance with the height restriction and measurement taken at the lower portion would result in a violation of the height restriction. Panos argues that this results in multiple meanings and thus, a latent ambiguity. We disagree.

¶ 17 The height restriction is "32 feet" and is to be "measured from the existing street lying west and adjacent to said land." This language is unambiguous and does not have multiple meanings. The terms "existing street lying west and adjacent to said land" mean, as conceded by the parties,

---

3. The Utah Supreme Court has consistently declared that

"[w]hen interpreting a contract, a court *first* looks to the contract's four corners to determine the parties' intentions, which are controlling. If the language within the four corners of the contract is unambiguous ... a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law."

*Fairbourn Commer., Inc. v. American Hous. Ptnrs., Inc.,* 2004 UT 54, ¶ 10, 94 P.3d 292 (emphasis added) (quoting *Bakowski v. Mountain States Steel, Inc.,* 2002 UT 62, ¶ 16, 52 P.3d 1179); *see also Khalsa v. Ward,* 2004 UT App 393, ¶ 7, 101 P.3d 843 ("When interpreting deeds, 'the intention of the parties as drawn from the whole deed must govern,' and we look to the language the parties used to discern their intent.") (quoting *Hartman v. Potter,* 596 P.2d 653, 656 (Utah 1979)); *Continental Bank & Trust Co. v. Bybee,* 6 Utah 2d 98, 306 P.2d 773, 775 (1957) (looking first to "four corners of the instrument," then if still ambiguous, to contemporaneous writings on same subject matter, and if still ambiguous, to extrinsic parol evidence).

the portion of Elm Ridge Road, lying west and adjacent to Lot 29. As no other words are used to narrow the precise location on Elm Ridge Road where the measurement is to originate, any point of measurement originating on the portion of Elm Ridge Road, lying west and adjacent to Lot 29, satisfies this part of the height restriction. We "will not rewrite a [deed] to supply terms which the parties omitted." *Hal Taylor Assocs. v. Unionamerica, Inc.*, 657 P.2d 743, 749 (Utah 1982). Although the terms are broad in their application, it does not mean the terms are ambiguous.

¶ 18 The word "from" used in the height restriction also does not specify a more precise location on the street where the measurement is to originate. In its plain meaning, the word "from" indicates a place as a starting point. Therefore, the height restriction measurement need only have a starting point someplace on the portion of Elm Ridge Road, lying west and adjacent to Lot 29. If the parties intended a more precise measurement point on Elm Ridge Road, the parties could have so indicated. Parties have a duty "to make certain that their agreements have in fact been fully included in the final document." *Secor v. Knight*, 716 P.2d 790, 795 (Utah 1986). As we "construe a deed as it is written," *Hartman*, 596 P.2d at 656, and "resolve all doubts in favor of the free and unrestricted use of property," *Freeman*, 423 P.2d at 159, we hold that the height restriction language is not ambiguous as a matter of law.

## B. Mutual Mistake

¶ 19 Panos also asserts that the lack of a more precise location for measuring the height restriction constitutes a mutual mistake that precludes merger. We disagree. Although mistakes can bar the application of merger, "not every mistake will suffice." *Embassy Group, Inc. v. Hatch*, 865 P.2d 1366, 1371 (Utah Ct.App.1993). "[A] mistake precludes merger when one of the parties demonstrates [that] a *mutual* mistake in the drafting of the contractual documents has occurred." *Id.* (emphasis added) (citation and quotations omitted). "Mutual mistake" is defined as "[a] mistake in which

each party misunderstands the other's intent." Black's Law Dictionary 1017 (7th ed. 1999). The Utah Supreme Court has required that "when a party denies merger due to mistake, he has the burden to show mistake by *clear and convincing evidence*." *Neeley v. Kelsch*, 600 P.2d 979, 981 (Utah 1979). "The party denying merger must demonstrate that (1) the instrument does not conform to the intent of both parties, [or] (2) the claimant was mistaken as to the content of the instrument and the other party knew of the mistake but kept silent, or (3) the claimant was mistaken as to actual content due to fraudulent affirmative behavior." *Embassy Group*, 865 P.2d at 1372 (citations and quotations omitted). Panos fails to demonstrate any of these arguments. Before the trial court and on appeal, Panos asserts only that the instrument does not conform with the intent of the parties. We, therefore, limit our review to this argument. Based on our review, Panos fails to provide clear and convincing evidence that the deed, specifically the height restriction, did not conform to the intent of both of the parties.

¶ 20 Moreover, Panos failed to allege mistake in his pleadings, as required by rule 9(b) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 9(b). The trial court, therefore, can "only examine[ ] the face of the deed[ ] in resolving the dispute." *Neeley*, 600 P.2d at 981. Based on the face of the deed before us, the height restriction of thirty-two feet may be satisfied by measurement from any point on the portion of Elm Ridge Road lying west and adjacent to Lot 29. Any mistake in the language is Panos's unilateral mistake in failing to specify a more precise origination point for measuring the height restriction.

## III. Reformation

¶ 21 Additionally, Panos argues that the "deed should be reformed pursuant to the principles of equity to reflect the agreement of the parties, even if an important provision is not mentioned at all." We disagree. The Utah Supreme Court set forth two grounds before reformation of an agreement is permissible: (1) "mutual mistake of the parties" or (2) "ignorance or mistake by

one party, coupled with fraud by the other party." *Hottinger v. Jensen,* 684 P.2d 1271, 1273 (Utah 1984). As Panos has failed to establish mutual mistake and also does not allege any claims of fraud in his pleadings, Panos fails to satisfy any grounds for reformation. Therefore, the trial court did not err in denying such relief.

### IV. Attorney Fees

¶ 22 Olsen requests attorney fees on appeal based on the contract. "In Utah, attorney fees are awarded only if authorized by statute or contract. If provided for by contract, attorney fees are awarded in accordance with the terms of that contract." *Foster v. Montgomery,* 2003 UT App 405, ¶ 12, 82 P.3d 191 (citations and quotations omitted); *see also Management Servs. Corp. v. Development Assocs.,* 617 P.2d 406, 409 (Utah 1980) (holding that a contract provision for attorney fees includes those incurred by the prevailing party on appeal as well as at trial). The contract states, in pertinent part, that "[i]n the event of litigation ... to enforce this Contract, the prevailing party shall be entitled to costs and reasonable attorney fees." Olsen is the prevailing party on appeal and, therefore, is awarded attorney fees on appeal. We remand to the trial court for a determination of attorney fees reasonably incurred on appeal.

### CONCLUSION

¶ 23 The merger doctrine applies to the deed. Although the height restriction in the deed is broad in its application, it is not ambiguous. As a result, any point on the portion of Elm Ridge Road lying west and adjacent to Lot 29 may be used as the originating measuring point in satisfying the height restriction. We conclude that the ambiguity and mutual mistake exceptions to the merger doctrine are inapplicable. We also conclude that reformation was properly denied by the trial court. Finally, Olsen is awarded reasonable attorney fees on appeal.

¶ 24 Accordingly, we affirm the trial court's grant of summary judgment in favor of Olsen and remand to the trial court for a determination of Olsen's reasonable attorney fees incurred on appeal.

¶ 25 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and WILLIAM A. THORNE JR., Judge.