**2018 UT App 26**

## THE UTAH COURT OF APPEALS

IN THE MATTER OF THE EVAN O. KOLLER REVOCABLE LIVING TRUST

MARK KOLLER,
Appellee,
*v.*
LUANN K. SHAFFER AND KATHRYN PROUNIS,
Appellants.

Opinion
No. 20160215-CA
Filed February 15, 2018

First District Court, Logan Department
The Honorable Brandon J. Maynard
No. 143100098

M. Robert Smith and Christopher L. Daines,
Attorneys for Appellant LuAnn K. Shaffer

Matthew N. Evans and Matthew M. Cannon,
Attorneys for Appellant Kathryn Prounis

James K. Tracy, Robert S. Tippett, James C.
Dunkelberger, and Trevor M. Crowley, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGE KATE A. TOOMEY concurred. JUDGE GREGORY K. ORME
concurred in Sections II and III, and concurred in the result,
without opinion, in Section I.

MORTENSEN, Judge:

¶1     Written instruments speak for themselves, and only specific exceptions to that general rule allow a court to look outside a document when interpreting it. The district court ruled that LuAnn K. Shaffer expressly resigned as trustee in writing.

Because the district court properly interpreted the relevant provisions of a trust instrument and the associated resignation, we affirm its grant of summary judgment in favor of Mark Koller.[1]

¶2     Mark[2] brought this suit seeking a declaration that he was the rightful trustee of the Evan O. Koller Revocable Living Trust (the Trust). Evan O. Koller established the Trust in 2006, designating himself as both settlor and trustee of the Trust. Evan named LuAnn successor trustee, and the appointment was to be operative upon his "death, resignation or incapacity." In a proceeding not relevant to this appeal, Evan was declared incapacitated in 2006. Evan's children,[3] including Mark and LuAnn, stipulated to the appointment of a professional trustee in lieu of LuAnn accepting trusteeship. When the professional trustee resigned in 2009, LuAnn became trustee.

¶3     Around this same time, another of Evan's children, Kathryn Prounis, was serving as co-conservator of Evan's estate (the Estate) with her brother, Dan Koller. Kathryn informed LuAnn that the Estate was "out of money" and that "the co-conservators were trying to get a loan" from Lewiston State Bank (the Bank). The Bank insisted that the court appoint Kathryn and Dan as trustees of the Trust before it would consider the requested loan.

---

1. A separate appeal involving many of these same parties has been resolved by the court in a separate opinion issued today. *See In re Koller*, 2018 UT App 27.

2. Because many of the parties involved in this case share a last name, we refer to individuals by their first names throughout this opinion. We intend no disrespect by the apparent informality.

3. All parties on appeal are Evan's natural children.

¶4     Kathryn was under the impression that she and Dan were already trustees by way of a prior stipulation among Evan's children. She nevertheless requested that LuAnn formally resign as trustee. On May 29, 2009, LuAnn signed a notarized document (the Resignation), stating, "I, LuAnn K. Shaffer, also known as LuAnn K. Nelson, hereby resign as successor trustee of [the Trust]." That same day, LuAnn delivered the Resignation to an employee of the Bank.

¶5     The Resignation contained no language making LuAnn's resignation conditional upon other events—such as the Estate obtaining the requested loan—but LuAnn contends that her intention in signing the Resignation was that it would be invalid if the loan was not approved. The loan request as it was originally framed—as a mortgage loan—was abandoned, but the Bank issued the Estate a line of credit five days after LuAnn signed the Resignation.

¶6     Several years later, Evan died. Prior to his death, Evan had signed an amendment to the trust instrument, specifying that "[u]pon the death, resignation or incapacity of LuAnn . . . as Trustee, the successor Trustee shall be Mark." After Evan's death, Mark received a copy of the Resignation from Dan. Believing that LuAnn had resigned as trustee, Mark sought appointment as successor trustee and initiated the present case in the district court.

¶7     LuAnn and Kathryn opposed Mark's efforts, arguing that LuAnn "never intended to resign nor has she ever resigned as trustee of" the Trust. However, the district court ultimately concluded that the Resignation spoke for itself and granted summary judgment in Mark's favor. The court appointed Mark as "the sole trustee" and concluded that he was authorized "to marshal the assets of [the Trust] . . . and all trusts created thereunder, and to administer such trust(s) according to its terms."

¶8      LuAnn appeals,[4] arguing that the district court erred in granting summary judgment. The errors she alleges all center on the question of whether the district court properly concluded that she had resigned as trustee; the basis of its decision to grant summary judgment to Mark. "We review the trial court's [grant of] summary judgment for correctness, considering only whether the trial court correctly applied the law and correctly concluded that no disputed issues of material fact existed." *Hermansen v. Tasulis*, 2002 UT 52, ¶ 10, 48 P.3d 235.

¶9      According to LuAnn, there are seven ways in which the district court erred in its conclusion that she resigned as successor trustee: (1) LuAnn never "legally resigned" as successor trustee; (2) the Resignation was to be held in escrow unless and until the Bank granted the mortgage loan, but the "mortgage loan transaction . . . was abandoned and never consummated," leaving the Resignation "voided and destroyed and [with] no legal effect"; (3) the Bank's request for the Resignation was improper; (4) LuAnn never intended to resign unless the mortgage loan was granted; (5) she never delivered the Resignation to any beneficiary of the Trust; (6) no one relied upon the Resignation; and (7) "LuAnn at all relevant times acted as Trustee of the Trust." Mark counters that LuAnn "executed the Resignation, which unequivocally demonstrates her intent to resign as trustee of the Trust effective" on the date that the Resignation was signed. LuAnn insists that the district court should have considered extrinsic evidence before concluding that the Resignation established such an intent.

---

4. Kathryn also appealed and filed the appellants' brief in this matter. LuAnn joined that brief. Because the case involves whether LuAnn resigned as successor trustee, we use "LuAnn" from this point forward to refer to arguments made by both Kathryn and LuAnn.

¶10 In our view, the arguments raised by the parties fit within three main categories: parol evidence, delivery, and factual disputes. We therefore discuss each in turn.

## I. Parol Evidence

¶11 The district court did not err by refusing to consider parol evidence of LuAnn's intent. We typically see the parol evidence rule in conjunction with contracts and the interpretation of their terms, but the Resignation is not a contract.[5] We make this clarification because the parties rely almost exclusively on case law interpreting contracts and applying the parol evidence rule to those contracts, repeatedly addressing the issue of integration. *See e.g.*, *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326.

¶12 But because this is not a contract case, integration is immaterial.[6] Here, we employ the parol evidence rule as it applies to written instruments generally; that is, parol evidence is admissible only if the instrument contains an ambiguity. *See, e.g.*, *Meridian Ditch Co. v. Koosharem Irrigation Co.*, 660 P.2d 217, 221 (Utah 1983) (refusing to consider extrinsic evidence when there was no "ambiguity of [a] particular provision" of a decree and the "language [was] clear and [could] therefore be construed upon its face"); *Rowley v. Marrcrest Homeowners' Ass'n*, 656 P.2d 414, 417 (Utah 1982) (interpreting a plat and concluding that

---

5. The distinction becomes particularly important when we address LuAnn's argument that the Resignation was void for lack of consideration. *See infra* ¶¶ 19–21.

6. Even if integration were a relevant concept here, the parol evidence rule would not apply any differently. *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326 (stating that even "if a contract is integrated, parol evidence is admissible . . . to clarify ambiguous terms.").

because "[p]lats are writings[,] . . . parol evidence is inadmissible to explain or modify an unambiguous plat"); *see also Peterson v. Holloway*, 334 P.2d 559, 560–61 (Utah 1959) (defining "the parol evidence rule" as being "against permitting oral testimony to vary or contradict written instruments").[7]

¶13　The Trust directs that a trustee may "resign as Trustee after written notice of such resignation is delivered to the Grantor." Thus, because the Resignation is a written instrument, it is subject to the traditional operation of the parol evidence rule, and the district court was correct in excluding such evidence so long as the Resignation was unambiguous.

¶14　The parol evidence rule requires courts to first look at the four corners of a written instrument to determine the parties' intent, rather than considering extrinsic evidence.[8] *See Panos v.*

---

7. It is also well settled that "[w]e employ familiar principles of contract interpretation when construing trust instruments." *Dahl v. Dahl*, 2015 UT 79, ¶ 29. Thus, the parol evidence rule applies to the interpretation of trust documents. *Makoff v. Makoff*, 528 P.2d 797, 798 (Utah 1974) (discussing parol evidence as it relates "to the construction of trust instruments"). But this case does not involve a trust instrument as we normally think of that term in that it did not create the trust. *See id.* (referring to a trust instrument as one executed by a settlor in "the creation of the trust").

8. The Nebraska Supreme Court has, on at least one occasion, addressed a similar case. In *In re Trust Created by Cease*, 677 N.W.2d 495 (Neb. 2004), a trust settlor executed a "Termination of Trust," which declared that the settlor "hereby resigns from [his] position as TRUSTEE." *Id.* at 498. The lower court admitted parol evidence, including testimony regarding the settlor's "intentions at the time the document was executed." *Id.* at 500. The Nebraska Supreme Court concluded that because the

(continued…)

*Olsen & Assocs. Constr., Inc.*, 2005 UT App 446, ¶ 15 n.3, 123 P.3d 816. But "[i]t is generally recognized that where a written instrument is ambiguous, such evidence is admissible to show the intent of the parties." *Tanner v. Utah Poultry & Farmers Co-op.*, 359 P.2d 18, 20 (Utah 1961). LuAnn argues that the Resignation was ambiguous and, as such, the district court should have considered parol evidence to determine her intent in signing it. She specifically argues that "there is a latent ambiguity in the [Resignation] that requires analysis of extrinsic evidence under Utah law."

¶15 LuAnn misapprehends the operation of the parol evidence rule in determining whether a document contains a latent ambiguity. "Unlike facial ambiguities, a latent ambiguity arises from a collateral matter when the document's terms are applied or executed, not from any facial deficiency in the [document's] terms." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 40, 367 P.3d 994 (citation and internal quotation marks omitted). LuAnn rightly claims that Utah law "allow[s] courts to consider any relevant evidence to determine whether a latent ambiguity exists." (Quoting *Watkins v. Henry Day Ford*, 2013 UT 49, ¶ 28, 304 P.3d 841 (emphasis omitted).) But our supreme court recently took "the opportunity to clarify the conditions under which latent ambiguities arise and the evidence relevant to establishing them." *Mind & Motion*, 2016 UT 6, ¶ 40.

¶16 In *Mind & Motion*, our supreme court explained "that instances where extrinsic evidence is allowed to uncover a latent ambiguity will prove to be the exception and not the rule." *Id.* (citation and internal quotation marks omitted). It further

---

(…continued)
document was unambiguous, "to the extent that parol evidence concerning [the document] was admitted, it was error." *Id.* at 501.

announced, "Parties may not simply proffer subjective affidavits setting forth their favored interpretation of otherwise clear terms to create an ambiguity." *Id.* "Rather," the court clarified, "the extrinsic evidence must show that due to some collateral matter—trade usage, course of dealing, or some other linguistic particularity that arises in the context of extrinsic collateral matters—the [document's] terms mislabel a person or thing, or otherwise fail to reflect the parties' intentions." *Id.*

¶17 LuAnn does not contend that the parol evidence she wanted the district court to consider spoke to "some collateral matter" like "trade usage, course of dealing, or some other linguistic particularity." *Cf. id.* Instead, she presented the very sort of evidence the court in *Mind & Motion* warned against— LuAnn's deposition testimony and Kathryn's affidavit. In other words, it was subjective evidence setting forth LuAnn's "favored interpretation of otherwise clear terms." *See id.* This is not the sort of evidence that is admissible to show the existence of a latent ambiguity.

¶18 To interpret the parol evidence rule regarding latent ambiguities in the way LuAnn urges would result in a complete undoing of the parol evidence rule. Any written document would be subject to parol evidence simply where a party, for any reason, alleged that the party's intent differed from what appeared on the face of the document. The district court was correct in refusing to interpret the rule this way.

¶19 LuAnn also argues—separate from her contentions about latent ambiguities—that the district court should have considered the loan documents along with the Resignation because they were "executed substantially contemporaneously and are clearly interrelated." (Quoting *Shields v. Harris*, 934 P.2d 653, 657 (Utah Ct. App. 1997).) But this argument begins with LuAnn's assertion that "[t]he first step in the application of the parol evidence rule is for the court to determine whether the

agreement is integrated." And this assertion is inapposite, as integration affects application of the parol evidence rule only when dealing with the interpretation of contracts—and this is not a contract case. *See supra* ¶ 11 & note 5. We thus have no occasion to consider this particular issue further.

¶20 Finally, LuAnn argues that the district court should have considered extrinsic evidence in support of her contention that the Resignation was not supported by consideration. (Citing *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 15, 182 P.3d 326 ("[W]e will nevertheless allow extrinsic evidence in support of an argument that the contract is not, in fact, valid for certain reasons that we have specified.").) In her view, because she signed the Resignation "only in expectation of and in connection with the receipt of a loan" and that "specific loan, however, was never provided," the Resignation "was not effective and lacked consideration." But whether consideration existed is immaterial unless we are considering whether a contract exists. *See Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 91 (Utah 1988) ("If there is lack of consideration, there is no contract.").

¶21 As we have now repeatedly explained, this is not a contract case. *See supra* ¶ 11 & note 5. Contract law is helpful only so far as it provides analogy to the situation before us. Here, however, the exception to the parol evidence rule that LuAnn relies upon is one specifically carved out for evaluating whether a contract exists.[9] *See Tangren*, 2008 UT 20, ¶ 11. In other

---

9. Even if we extended contract law to this specific circumstance, LuAnn's claim would fail. She argues that because the mortgage loan was never consummated, there was no consideration for the Resignation. "There is a distinction between lack of consideration and failure of consideration. Where consideration is lacking, there can be no contract. Where consideration fails, there was a contract when the agreement was made, but because of some

(continued…)

words, the district court was only required to consider parol evidence relating to lack of consideration if the claim before it was based on a contract. Because the district court was not faced with a contract claim, it was not required to consider parol evidence regarding consideration. Thus, the district court did not err in this regard.

¶22 The district court was correct in refusing to consider parol evidence related to LuAnn's claim that the Resignation contained a latent ambiguity. And because the Resignation is not a contract, there is no requirement that it be supported by consideration; thus, it was not error for the district court to also refuse to consider parol evidence on the question of consideration. Accordingly, the district court's ruling in its summary judgment order that the "parol evidence rule bar[red] extrinsic evidence of intent" was not erroneous.

## II. Delivery

¶23 The district court properly concluded that the Resignation was delivered in accordance with the terms of the Trust. The Trust required that a trustee's resignation be in writing and delivered to the Grantor. There is no dispute that the Resignation is in writing. Instead, the dispute comes over whether there was "effective delivery of [the Resignation] as required by the trust." There was no delivery, LuAnn argues, because she never intended to "deliver or otherwise provide

_____

(…continued)

supervening cause, the promised performance fails." *General Ins. Co. of Am. v. Carnicero Dynasty Corp.*, 545 P.2d 502, 504 (Utah 1976). Even if the Resignation were conditioned on the estate obtaining the loan, the question would be whether there was a failure of consideration, not the lack of consideration. And in this case, consideration appears to have been given in the form of a line of credit.

notice of" the Resignation to Kathryn and Dan, who acted as Evan's representatives after he was declared incapacitated.

¶24    LuAnn did not deliver the Resignation directly to Kathryn or Dan. Instead, after she executed it, she left it with Evan's accountant "to deliver it to the title company." The accountant emailed the Resignation to Kathryn and Dan "to keep [them] informed of the documents that were tendered to the title company in connection with the proposed loan transaction." LuAnn argues that the accountant was not her agent, nor was the accountant acting according to any instruction from LuAnn when she emailed Kathryn and Dan. Mark argues that this is of no consequence.

¶25    As Mark points out, the Trust "contains no formal requirement for delivery of a trustee's resignation. The Trust requires only that the resignation be 'delivered to the Grantor.'" Both Mark and LuAnn primarily focus on delivery of deeds under Utah law. Their discussions of whether LuAnn intended for the deed to be delivered, to whom she instructed it be delivered, and whether that constitutes actual delivery unnecessarily complicate the matter.

¶26    Assuming the relevant trust provision required LuAnn to be the person who delivered the Resignation to the Grantor,[10]

---

10. We are not entirely convinced that this is what the trust provision required. The relevant trust provision states:

> Any Trustee or Co-trustee of this Trust Agreement may resign as Trustee after written notice of such resignation is delivered to the Grantor, or, if the Grantor is deceased, to all of the beneficiaries then receiving income interests, and upon the acceptance of the successor Trustee to act.

Mark and LuAnn disagree as to whether LuAnn's relinquishment of the Resignation to the accountant was

(continued…)

LuAnn's position on appeal that no such delivery occurred is untenable. When LuAnn signed the Resignation, she did so at the request of Dan and Kathryn, the co-conservators of the Estate. They stood in the shoes of the Grantor. They requested that LuAnn sign the Resignation, and she obliged. She then relinquished control of the document to a third party so that Dan and Kathryn's efforts to secure a loan could move forward. As part of that process, the third party delivered the Resignation to Dan and Kathryn. More simply stated, there was a direct line of delivery between LuAnn, the third party, and the individuals standing in the place of the Grantor. *Cf. Wilson v. Wilson*, 89 P. 643, 646 (Utah 1907) (explaining that in the case of deeds, "[t]he law is well settled that if a grantor delivers a deed to a third person absolutely as his deed, without reservation and without intending to reserve any control over the instrument," there can be valid delivery (citation and internal quotation marks omitted)). Accordingly, we see no error in the district court's conclusion that the Resignation was properly delivered.

### III. Factual Disputes

¶27    None of the factual disputes LuAnn raises should have precluded summary judgment. These disputes involve "whether

---

(…continued)
sufficient to prove that she intended delivery. But the Trust does not explicitly require a resigning trustee to intend delivery. Notably absent from the trust language is the specification of an actor. Instead, the Trust uses passive voice—"is delivered." We think it possible that once a written resignation "is delivered to the Grantor," and the successor Trustee agrees to his role, the resignation is operative. If the Trust instrument read, "after the Trustee delivers written notice of such resignation to the Grantor," this question might more clearly turn on who delivered the Resignation to Dan and Kathryn. But the Trust instrument does not.

LuAnn accepted and/or rejected the trusteeship" and concern "Mark's alleged acceptance of the trusteeship." Even if LuAnn is correct that there are contested facts on these points, they are immaterial.

¶28    First, LuAnn argues that because she had not yet accepted the trusteeship, she could not have resigned as trustee. The district court determined that this argument lacked merit; if she had not yet accepted her appointment as trustee, the Resignation was "an initial rejection of the trusteeship." LuAnn argues that this was an erroneous weighing of the evidence and inappropriate on summary judgment. We conclude that, instead, it was a proper application of the law.

¶29    Utah Code section 75-7-701 specifies that an individual "designated as trustee who has not yet accepted the trusteeship may reject the trusteeship." Utah Code Ann. § 75-7-701(2) (LexisNexis Supp. 2017). The district court did not, as LuAnn contends, engage in fact finding or weighing on this point; it did not decide whether LuAnn had "yet accepted the trusteeship." *See id.* Instead, it determined that it mattered not whether the trusteeship had been accepted. If it had, the Resignation relinquished the role. If it had not, section 75-7-701(2) allows for rejection of the role, which the Resignation would also accomplish. Put in terms of summary judgment, any dispute regarding whether LuAnn had accepted the trusteeship did not affect "any material fact." *See* Utah R. Civ. P. 56(a).

¶30    Second, LuAnn argues that even if she rejected or resigned from the trusteeship, "there are disputed issues of fact regarding Mark's alleged acceptance of the trusteeship." She cites the Restatement (Third) of Trusts for the proposition that it "is a question of fact in each case whether the trustee has manifested an intention to accept or to reject the trusteeship." Restatement (Third) of Trusts § 35 cmt. B (Am. Law Inst. 2003). While LuAnn "is correct that whether or not" acceptance

"occurred is a question of fact," she "fails to cite any disputed issues of fact that would have prevented the district court from determining the question as a matter of law on summary judgment." *See McLaughlin v. Schenk*, 2009 UT 64, ¶ 33, 220 P.3d 146. Where LuAnn directs us to no facts in the record demonstrating that Mark did not accept trusteeship, there is no dispute regarding this fact. The district court was therefore correct in concluding as a matter of law that Mark was "the sole trustee."

## CONCLUSION

¶31 The district court properly granted summary judgment in Mark's favor. LuAnn was not entitled to present parol evidence regarding her intent in signing the Resignation. The Resignation was delivered to the Grantor's representatives, making it effective. And any factual issues LuAnn raised in opposition to summary judgment were immaterial.

¶32 Affirmed.

_____