**2019 UT App 10**

## THE UTAH COURT OF APPEALS

IN THE MATTER OF STEPHEN M. WEIDNER.

SUANN TAYLOR WEIDNER,
Appellant,
*v.*
GUARDIAN AND CONSERVATOR SERVICES LLC,
Appellee.

Opinion
No. 20170237-CA
Filed January 10, 2019

Fourth District Court, Provo Department
The Honorable James R. Taylor
No. 123400054

Daniel K. Brough and Barry N. Johnson, Attorneys
for Appellant

Scott W. Hansen and Brenda L. Flanders, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Guardian and Conservator Services LLC (Guardian) served as the court-appointed guardian and conservator for Stephen M. Weidner. SuAnn Taylor Weidner, Stephen's spouse, disagreed with Guardian's administration of the estate and initiated an action for separate maintenance naming Stephen and Guardian, in its capacity as guardian and conservator for

Stephen, as respondents.[1] Guardian, Stephen, and SuAnn subsequently executed a settlement agreement resolving all outstanding issues between them. The relative calm was short-lived, however, as both SuAnn and Guardian soon came to believe that the other had breached the agreement. SuAnn and Guardian each requested that the trial court enforce the terms of the settlement agreement. For the alleged breaches, SuAnn sought damages from Guardian in its individual capacity rather than in its role as guardian and conservator for Stephen. The trial court rejected SuAnn's arguments, granting summary judgment for Guardian and dismissing some of SuAnn's claims. Following trial, the court dismissed SuAnn's remaining claims because it determined that Guardian was not individually liable to SuAnn under the relevant provisions of the settlement agreement. SuAnn appeals. We reverse the trial court's grant of summary judgment, vacate its findings of fact and conclusions of law resulting from the trial, and remand for further proceedings.

## BACKGROUND

¶2     SuAnn and Stephen had been married approximately fourteen years when SuAnn initiated divorce proceedings. A few months later, Stephen's friend, business advisor, and personal attorney filed a petition seeking appointment of a guardian and conservator for Stephen due to his infirmity. Subsequently, the divorce action was dismissed and SuAnn stipulated to the appointment of Guardian as guardian and conservator for Stephen in the guardianship action.

¶3     Following Guardian's appointment, SuAnn filed a complaint for separate maintenance in a different court, naming

---

1. Because SuAnn and Stephen Weidner share the same last name, we refer to them by their first names throughout this opinion. We mean no disrespect by the apparent informality.

Stephen and Guardian, in its capacity as guardian and conservator for Stephen, as respondents. In her separate maintenance petition, SuAnn generally alleged that Stephen and Guardian had failed to provide her sufficient support. Instead of providing SuAnn sustaining support, she asserted, Guardian merely represented that the estate lacked sufficient funds. Indeed, Guardian had maintained that the estate's liquid assets were less than that needed to cover the estate's expenses.

¶4    Two days after SuAnn filed the separate maintenance action, the court granted SuAnn's motion to enjoin Guardian from selling two parcels of real property, scheduled to be sold that day. However, the restraining order was served on Guardian and the other named defendants after the sales closed. Approximately five days later, SuAnn served the defendants with her separate maintenance complaint. Due to the sale of the parcels, SuAnn amended her complaint to incorporate quiet title and conversion claims. The separate maintenance case and the guardianship case were later consolidated.

¶5    In an effort to resolve all of the pending claims, SuAnn, Guardian, and Stephen engaged in mediation and ultimately executed a settlement agreement (the Agreement). Among other things, the Agreement provided for: (1) dismissal of SuAnn's separate maintenance action; (2) the sale of the marital home; (3) establishment of the Weidner Trust, naming SuAnn as its sole beneficiary; and (4) the continuing obligations of Guardian as court-appointed guardian and conservator for Stephen. As to the sale of the marital home, SuAnn retained exclusive decision-making authority to "identify household furnishings to be included in the sale of the [h]ome." The president of Guardian signed the Agreement twice: once on behalf of the business entity, in its individual capacity, and once on behalf of Stephen, in Guardian's capacity as his guardian and conservator.

¶6    As anticipated, Guardian listed the marital home for sale. SuAnn, who was living in the home at the time, removed some trees from the property and placed them on property belonging

to a third party. Following an offer to purchase the property, SuAnn refused to allow a realtor to access the home to prepare for the sale, and she refused to vacate on the date scheduled for the sale's closing. Fearing disruption of the sale, Guardian asked the court to issue a temporary restraining order. The court ultimately denied the request due to the availability of contractual remedies, and it indicated that while "what [SuAnn] has done to the home is annoying," her conduct "is far from looting."

¶7 Several months later, SuAnn filed a motion to enforce the Agreement, seeking damages for alleged breaches by Guardian. Guardian denied the allegations and followed suit with its own motion to enforce the Agreement. While the enforcement motions were pending, Stephen passed away. Guardian then transferred the remaining assets in the estate to SuAnn, terminating its role as guardian and conservator for Stephen. Subsequently, SuAnn filed a document entitled "Combined (1) Supplemental Memorandum in Support of Motion to Enforce Settlement Agreement, and (2) Objections to Final Accounting." SuAnn argued that, under the terms of the Agreement, Guardian undertook responsibilities to SuAnn in its individual capacity rather than in its capacity as Stephen's guardian and conservator and did not fulfill those obligations. Consequently, she contended, Guardian was individually liable for the alleged breaches.

¶8 The trial court requested additional briefing and held a hearing before narrowing the issue to "whether [Guardian] is individually liable for performance breaches." The trial court concluded that Guardian consented to paragraph 4 of the Agreement—the section detailing Guardian's continuing obligations as guardian and conservator of Stephen (the Continuing Obligations Provision)—in its capacity as guardian and conservator, not in its individual capacity. In other words, if Guardian had breached the Continuing Obligations Provision, the estate could be held liable but not Guardian individually.

The court also concluded that, with respect to other provisions in the Agreement, Guardian had indeed undertaken unique responsibilities to SuAnn and received benefits distinct from those received by its ward. Specifically, in its individual capacity, Guardian agreed to a general release of claims against SuAnn. Guardian also agreed that the prevailing party in any challenge to the Agreement would be entitled to attorney fees. Consequently, claims related to these provisions could be pursued against Guardian in its individual capacity.[2]

¶9     Based upon the court's ruling, Guardian filed a motion for partial summary judgment seeking resolution of the issue of its individual liability. The court granted the motion, concluding that Guardian could not be held individually liable pursuant to Utah Code section 75-5-429(1). *See* Utah Code Ann. § 75-5-429(1) (LexisNexis Supp. 2018) ("Unless otherwise provided in the contract, a conservator is not individually liable on a contract properly entered into in [its] fiduciary capacity in the course of administration of the estate unless [it] fails to reveal [its] representative capacity and identify the estate in the contract."). The court dismissed SuAnn's claims related to the Continuing Obligations Provision, and the parties proceeded to trial on SuAnn's and Guardian's remaining claims.

¶10     At trial, SuAnn continued to pursue her claims that Guardian was individually liable for alleged breaches of the Continuing Obligations Provision. Citing the court's prior summary judgment ruling, Guardian objected to many of SuAnn's attempts to introduce evidence of Guardian's alleged breaches of that provision. Guardian also objected to SuAnn's attempt to introduce evidence of the parties' intent in entering

---

2. The court's ruling left intact potential claims SuAnn might assert against Guardian as guardian and conservator over Stephen's estate. SuAnn—the estate's only beneficiary—declined to pursue any claims against the estate.

the Agreement. Particularly, Guardian sought to exclude evidence relating to any alleged independent duties it undertook in the Continuing Obligations Provision. The trial court sustained Guardian's objections and excluded any such evidence. Without this evidence supporting SuAnn's claims, the trial court dismissed them. The court further concluded that Guardian, as the prevailing party, was entitled to an award of attorney fees. The court granted Guardian's request for fees and entered judgment against SuAnn. SuAnn filed a motion for new trial, which the trial court denied. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶11    SuAnn argues that the trial court erroneously granted Guardian's motion for partial summary judgment, dismissing her claims. "We review the trial court's grant of summary judgment for correctness, considering only whether the trial court correctly applied the law and correctly concluded that no disputed issues of material fact existed." *In re Evan O. Koller Revocable Living Trust*, 2018 UT App 26, ¶ 8, 414 P.3d 1099 (quotation simplified).[3]

## ANALYSIS

¶12    SuAnn argues that the trial court erroneously granted Guardian's motion for partial summary judgment, dismissing

---

3. SuAnn raises various additional challenges to the trial court's award of attorney fees to Guardian. Because we conclude that the trial court erred in granting Guardian's motion for summary judgment and that this error infected the trial, we vacate the trial court's fees award. Accordingly, we need not address SuAnn's arguments regarding the propriety of that award. For the same reason, we do not provide the background facts related to those arguments.

her claims that Guardian should be held individually liable for its alleged breaches of certain duties set forth in the Continuing Obligations Provision of the Agreement. Specifically, SuAnn asserts that the trial court erred when it determined that, pursuant to the terms of the Agreement, Guardian consented to the Continuing Obligations Provision not in its individual capacity, but in its capacity as guardian and conservator for Stephen. We determine that the Agreement is ambiguous as to whether Guardian consented to certain responsibilities in its individual capacity or as guardian and conservator for Stephen. We therefore vacate the trial court's order granting partial summary judgment and remand for further proceedings.[4]

¶13    SuAnn contended below that Guardian breached terms of the Agreement—terms that she argued provided for Guardian's individual liability to her. The trial court was not persuaded and granted summary judgment to Guardian on the issue of Guardian's individual liability based upon its review of the Agreement in light of Utah Code section 75-5-429. This section provides in pertinent part, "Unless otherwise provided in the contract, a conservator is not individually liable on a contract properly entered into in [its] fiduciary capacity in the course of administration of the estate unless [it]

---

4. SuAnn presents three arguments supporting her contention that the trial court erred when it granted Guardian's motion for partial summary judgment. First, SuAnn contends Guardian presented no evidence supporting the court's entry of summary judgment in Guardian's favor. Second, SuAnn argues the trial court erroneously determined that her claims against Guardian under the Continuing Obligations Provision were barred by statute. And third, SuAnn asserts the trial court—applying the same statute—improperly dismissed her claims related to provisions of the Agreement other than the Continuing Obligations Provision. Because we are persuaded by SuAnn's second argument, we need not address her other arguments.

fails to reveal [its] representative capacity and identify the estate in the contract." Utah Code Ann. § 75-5-429(1) (LexisNexis Supp. 2018). SuAnn asserts neither that Guardian failed to reveal its representative capacity nor that the estate was not identified in the contract. Rather SuAnn argues that the Agreement provided for Guardian's individual liability or, in the alternative, the Agreement was not "properly entered into in [Guardian's] fiduciary capacity." Accordingly, we limit our analysis to whether the Agreement provided for Guardian's individual liability on SuAnn's claims.

¶14    Following what may be characterized as contentious interactions between SuAnn and Guardian, SuAnn filed a petition for separate maintenance. She named Stephen as well as Guardian, in its capacity as guardian and conservator for Stephen, as respondents, and asserted, among other things, that Guardian failed to provide her with adequate financial support. In Guardian's view, Stephen's estate simply did not have sufficient liquid assets to provide the support SuAnn sought.[5] SuAnn, Stephen, and Guardian resolved all of these disputes by executing a settlement agreement; each agreed to settle its claims and release the other from any remaining claims. Guardian signed the Agreement on its own behalf and separately signed on behalf of Stephen.

---

5. We note that following the sale of SuAnn and Stephen's marital home—after an order had been entered enjoining the sale—SuAnn amended her petition to include other claims against Guardian in its capacity as guardian and conservator for Stephen. She asserted claims of conversion and quiet title against Guardian as well as the purchasers of the house. At the time the parties entered into the Agreement, these claims had been dismissed with prejudice, though SuAnn had filed a motion to reconsider, which motion remained outstanding.

¶15    In this context, the trial court observed that Guardian executed the Agreement "as both guardian and conservator [for Stephen] but also as an individual entity." With respect to Guardian's particular responsibilities listed in the Continuing Obligations Provision, however, the trial court concluded that "[t]hese are duties [Guardian] clearly undertook in its role as guardian and conservator for Stephen." Reaching this conclusion, the trial court at least implicitly determined that the Agreement is not facially ambiguous as to whether Guardian consented to individual liability within the Continuing Obligations Provision. We agree with SuAnn that this was error.

¶16    As we have stated, Guardian, in its capacity as guardian and conservator for Stephen, may not be held individually liable unless it either (a) entered into the Agreement, either in whole or in part, in its individual capacity or (b) consented to individual liability in the Agreement even for duties that might be considered fiduciary. *See supra* ¶ 13. Utah law generally protects guardians and conservators, providing that, "[u]nless otherwise provided in the contract, a conservator is not individually liable on a contract properly entered into in [its] fiduciary capacity in the course of administration of the estate." Utah Code Ann. § 75-5-429(1). The question before the trial court, considering Guardian's partial summary judgment motion, was whether Guardian had entered into all or part of the Continuing Obligations Provision in its individual capacity, or at least had "provided otherwise" in the Agreement and thereby agreed to individual liability for fiduciary obligations. *See id.*

¶17    To determine whether Guardian entered into the Agreement in its individual capacity or consented to individual liability under the Agreement, "we look to the language of the contract," and "consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *Cafe Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235 (quotation simplified). If the contract is unambiguous, "the parties' intentions are determined from the

plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 19, 54 P.3d 1139 (quotation simplified). "Only if the language of the contract is ambiguous will we consider extrinsic evidence of the parties' intent." *Cafe Rio*, 2009 UT 27, ¶ 25. "An ambiguity exists in a contract term or provision if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *WebBank*, 2002 UT 88, ¶ 20 (quotation simplified).

¶18 The Continuing Obligations Provision begins, "Guardian agrees to perform the following continuing obligations . . . ." It further states, "Guardian shall continue to serve as the Court-appointed guardian and conservator for Stephen." The provision obligated Guardian, among other things, to (1) provide a monthly allowance to SuAnn out of the estate, (2) indemnify SuAnn from any claims arising out of Stephen's personal or business affairs, and (3) provide SuAnn a quarterly report on Guardian's administration of Stephen's estate.

¶19 On its face, the Continuing Obligations Provision certainly describes Guardian's responsibilities. But it is not clear whether these duties attach to Guardian in its individual capacity or to Guardian in its role as guardian and conservator for Stephen. In other words, the language of the Continuing Obligations Provision does not itself settle the question of whether Guardian contractually consented to be individually liable for the obligations set forth in this section of the Agreement. On one hand, this provision does not explicitly provide for Guardian's individual liability, and many of the tasks included in the provision are arguably attendant to its role as guardian and conservator for Stephen. On the other hand, the obligations are clearly stated as Guardian's rather than Stephen's or Stephen's Estate's. Importantly, in other places in the Agreement the parties take pains to point out certain obligations that are, at root, Stephen's, and in which Guardian's only role is

to execute, as his guardian, Stephen's obligations. For example, the Agreement directs the proceeds from the sale of the marital home to the parties, stating, "If the net sale proceeds from the sale of the [h]ome are [dollar amount] or greater, *Guardian, for Stephen's benefit*, shall receive [lesser dollar amount] from the sale of the [h]ome . . . ." (Emphasis added.) The parties elected not to apply similar, distinguishing language in the Continuing Obligations Provision, and instead simply set forth the duties therein as Guardian's.[6]

¶20    As written, the Continuing Obligations Provision is ambiguous as to whether the parties intended to provide for the individual liability of Guardian. The contrary interpretations offered by the parties are both reasonably supported by the language of the contract. *See Cafe Rio*, 2009 UT 27, ¶ 25. When a contract or provision is ambiguous, the court must determine "the parties' intended meaning," which is "a question of fact to be determined by extrinsic evidence of intent." *Florence v. Colbert*, 2011 UT App 72, ¶ 2, 251 P.3d 246 (quotation simplified).

¶21    Here, the trial court granted summary judgment to Guardian, implicitly concluding that the Continuing Obligations Provision was unambiguous. We conclude that the trial court improperly determined that the Continuing Obligations Provision was unambiguous and that no disputed issues of

---

6. We do not decide here whether the lack of distinguishing language—identifying the responsibilities simply as Guardian's, rather than as Stephen's that Guardian will execute on Stephen's behalf—is sufficient, alone, to establish that Guardian consented to individual liability in the Continuing Obligations Provision. However, the lack of distinguishing language supports a reasonable interpretation that the parties intended to make Guardian individually liable for the listed obligations, and therefore supports a determination that the Agreement is facially ambiguous on this issue.

material fact existed. *See In re Evan O. Koller Revocable Living Trust*, 2018 UT App 26, ¶ 8, 414 P.3d 1099.

¶22    Relying on its summary judgment ruling, the trial court excluded the presentation at trial of extrinsic evidence of the parties' intent in executing the Agreement. As a result, the court developed no record evidence of the parties' intent. Indeed, it appears the only evidence on this point was offered by SuAnn. She testified that by Guardian's separately signing the Agreement, SuAnn understood that "[Guardian] was making a personal commitment and obligation to [her]." The absence of evidence in the record of the parties' intent regarding the Continuing Obligations Provision forecloses our interpretation of the Agreement and requires a remand to the district court for additional proceedings.

¶23    Given the trial court's and the parties' commitment of resources to resolving the disputes in this matter, we do not lightly send this matter back for further proceedings. Because the record provides no preserved grounds for affirmance, however, a remand for further proceedings is the only available alternative. *See PC Riverview, LLC v. Xiao-Yan Cao*, 2017 UT 52, ¶ 34, 424 P.3d 162 (noting that "when a party raises alternative grounds for affirmance, an appellate court may affirm the judgment appealed from on any legal ground or theory apparent on the record" (quotation simplified)).

CONCLUSION

¶24    The trial court erred when it granted Guardian's motion for partial summary judgment and dismissed SuAnn's claims against Guardian in its individual capacity. The Agreement is facially ambiguous with respect to whether Guardian undertook duties in the Continuing Obligations Provision in its individual capacity or in its role as guardian and conservator for Stephen. Extrinsic evidence of the intent of the parties' in entering the Agreement—evidence not presently in the record—may reveal

whether Guardian should be held individually liable under this provision. We accordingly reverse the trial court's partial summary judgment ruling. Because the trial on the motion to enforce the Agreement was necessarily limited by the trial court's summary judgment ruling, we also vacate the trial court's findings of fact and conclusions of law. Guardian is no longer the prevailing party for purposes of the attorney fees award, so we also vacate the judgment against SuAnn for attorney fees. We remand to the trial court for further proceedings consistent with this opinion.

———————