**2023 UT App 121**

## THE UTAH COURT OF APPEALS

PARK CITY PREMIER PROPERTIES, LLC, ET AL.,
Appellants,
*v.*
SILVER SUMMIT ESTATES, ET AL.,
Appellees.

Opinion
No. 20220556-CA
Filed October 5, 2023

Second District Court, Ogden Department
The Honorable Jennifer L. Valencia
No. 190901546

Troy L. Booher, Dick J. Baldwin, Taylor P. Webb, and
Blake D. Johnson, Attorneys for Appellants

David C. Wright and Brooke A. White,
Attorneys for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1 Park City Premier Properties, LLC (Premier) subdivided property in Weber County, into the Silver Summit Estates (Silver Summit), equipping each lot with private wells. When the owners of these lots (the Lot Owners) became dissatisfied with their allotted water usage, they sued Premier, arguing the Weber County Code required provision of a secondary water system in addition to the wells. The Lot Owners filed a motion for partial summary judgment on their claim. Premier filed its own motion for partial summary judgment, arguing the Lot Owners' claim was barred under the County Land Use, Development, and Management Act (CLUDMA). The district court denied both motions. But after the Lot Owners renewed their motion, the court

granted partial summary judgment in their favor, ruling as a matter of law that Premier was required to provide a secondary water system to the subdivision. On Premier's interlocutory appeal, we reverse.

BACKGROUND

¶2    In 2013, Premier purchased foreclosed property in Weber County, planning to subdivide it into Silver Summit. The prior owner of the property was a shareholder in the Co-op Farm Irrigation Company (Co-op)—the only supplier of irrigation water to the area—and Premier purchased his shares. Premier then filed a Subdivision Application with the Weber County Planning Commission. In its application, Premier provided a certificate of ownership of the Co-op shares and indicated Silver Summit's secondary water[1] would be provided by "irrigation" and its culinary water would be provided by private wells.

¶3    In 2014, Weber County signed a Subdivision Improvement Agreement (the Agreement) with Premier. The Agreement required Premier to make improvements to Silver Summit, including installing a storm drain and street signs, paving an asphalt road, and relocating an existing shed. The Agreement required Premier to "comply with all relevant laws, ordinances, and regulations" in making these improvements, including the Weber County Public Works Standards and Technical Specifications (the Specs). Weber County was obligated to provide final plat approval if the terms and conditions of the Agreement were "consistent with all relevant state laws and local ordinances."

---

1. The Weber County Code defined "secondary water" as "water furnished for other than culinary purposes." Weber County Code § 106-4-2(m) (2019). Weber County has since repealed section 106-4-2(m). *See* Weber County, Amendment to the Culinary and Secondary Water Requirements for a Subdivision (May 25, 2021).

¶4      At the time, the relevant local ordinances listed certain required improvements for subdivisions, including an ordinance governing secondary water in the Weber County Code. This provision stated:

> Where a subdivision is proposed within an existing culinary water district[,] . . . the planning commission shall, as part of the approval of the subdivision, require the applicant to furnish adequate secondary water and install a secondary water delivery system to the lots in the subdivision sufficient to conform to the public works standards, if such water district or company files or has filed a written statement with the Weber County Planning Division which specifies that the policy of such water district or company is to the effect that its water is not to be used for other than culinary purposes and will not permit culinary water connections unless secondary water is provided by the applicant. A certified copy of the minutes of the board of trustees of such water district or company showing the enactment of such policy must be furnished to the planning commission.

Weber County Code § 106-4-2(m) (2019). The Specs further provided that secondary water systems "shall be considered as a required subdivision improvement" and "[e]ach secondary water system shall originate from a reliable water source capable of delivering a minimum annual supply of 3.0 acre-feet per acre of irrigable property." Weber County, Public Works Standards and Technical Specifications, section 1.17.05 (1982). Though the Silver Summit plat did not mention secondary water, Weber County approved it. Premier recorded the final plat and a Private Wells Deed Covenant soon after.

¶5      After receiving approval to subdivide, Premier did not sell any lots directly. Instead, it transferred the lots to several related

entities, who in turn sold the lots to the Lot Owners individually. The Real Estate Purchase Contracts (REPCs) that the Lot Owners signed allowed them to receive any water rights attached to the property. Premier maintained an informal arrangement with the selling entities to transfer Co-op shares to the Lot Owners who requested them in their REPCs.

¶6    In order to use the private wells on their lots, the Lot Owners filed an application with the Weber County Water Conservancy District (the Water District). The Water District provides culinary water to the area using an "exchange application" wherein homeowners use water from their private wells and the Water District releases a commensurate amount of water from a reservoir to compensate for the private use. The Lot Owners' applications—approved by the state engineer—allowed them to use their culinary wells to draw a specified amount for secondary water purposes.

¶7    Five years after Weber County approved Silver Summit, the Lot Owners became dissatisfied with the amount of secondary water they were allowed to draw from their wells and filed a complaint against Premier in district court. The complaint alleged (1) a breach of contract claim against the various lot sellers[2] and (2) an action under CLUDMA section 17-27a-802 to enforce section 106-4-2(m) of the Weber County Code against Premier. The Lot Owners argued section 106-4-2(m) required Premier to supply secondary water and to transfer its remaining Co-op shares to the Lot Owners.

¶8    The Lot Owners then filed a motion for partial summary judgment on their claim against Premier under CLUDMA section 17-27a-802. Premier then filed a cross-motion for partial summary judgment, arguing the Lot Owners' claim was barred because, as an appeal from a "land use decision" by an administrative

─────────────────

2. The Lot Owners' breach of contract claim against these entities is not relevant to this appeal.

authority, it should have been brought within thirty days under CLUDMA section 17-27a-801.

¶9　In its first ruling on the motions, the district court concluded section 106-4-2(m) of the Weber County Code was unambiguous but found "there are no undisputed material facts before the court that indicate whether the [Water District] filed a statement with the County." The court also determined the evidence was "insufficient and conflicting" as to whether Weber County's approval of Silver Summit was "a land use decision" that would be barred by CLUDMA's statute of limitations. Accordingly, the court denied both motions.

¶10　The Lot Owners renewed their motion for partial summary judgment, arguing that the latter half of section 106-4-2(m) of the Weber County Code was inapplicable to Silver Summit's situation and Premier must finish what it started and install secondary water infrastructure in the subdivision. Premier did not renew its motion.

¶11　In ruling on the Lot Owners' renewed motion, the district court found there was no longer any dispute of material fact precluding summary judgment on their claim. The district court noted that while it had previously accepted Premier's interpretation of the Weber County ordinances, it now found that interpretation "illogical and circular, at best." According to the court, "[c]onsidering the larger context of the ordinance, the specifications, Utah statutes, and the actual process to obtain well and/or irrigation water," section 106-4-2(m) "applies to a different scenario which may exist in other areas of the county, but clearly does not exist in the area at issue here." The court granted partial summary judgment to the Lot Owners, thus requiring Premier to provide secondary water to the subdivision.

### ISSUE AND STANDARD OF REVIEW

¶12　Premier seeks interlocutory review of the district court's grant of partial summary judgment to the Lot Owners, arguing

the Weber County Code does not require it to provide secondary water to Silver Summit and the Lot Owners' claim is procedurally barred by CLUDMA.[3] "We review the trial court's grant of summary judgment for correctness, considering only whether the trial court correctly applied the law and correctly concluded that no disputed issues of material fact existed." *In re Weidner*, 2019 UT App 10, ¶ 11, 438 P.3d 896 (cleaned up).

## ANALYSIS

¶13 In Weber County, a developer is required to file an application and submit a development plan for approval before subdividing land. *See* Weber County Code § 106-1-4 (2021). If a developer is granted final plat approval, it must make necessary improvements to the property. *Id.* At the time, the Weber County Code listed certain required improvements, including providing secondary water. Weber County Code § 106-4-2(m) (2019). Premier argues the ordinance did not require it to provide secondary water to Silver Summit and the district court erred in concluding it did. We agree with Premier.

¶14 Utah courts "interpret municipal and county ordinances and resolutions according to our well-settled rules of statutory interpretation and construction." *Pinetree Assocs. v. Ephraim City*, 2003 UT 6, ¶ 13, 67 P.3d 462. Thus, we "first examine the plain language of the ordinance and resort to other methods of interpretation only if the language is ambiguous." *Gardner v. Perry City*, 2000 UT App 1, ¶ 17, 994 P.2d 811. An ordinance is ambiguous when "its terms remain susceptible to two or more reasonable interpretations." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863. "A party's suggested interpretation of [an ordinance] is not reasonable" and will not

---

3. Because we conclude that the Weber County Code does not require Premier to provide secondary water to the subdivision, we do not reach Premier's argument regarding CLUDMA.

create ambiguity "when it contradicts the plain language." *State v. Wilkerson*, 2020 UT App 160, ¶ 11, 478 P.3d 1048 (cleaned up).

¶15 Premier reads section 106-4-2(m) of the Weber County Code to require a developer to provide secondary water only if (1) the water district filed a written statement that it has a policy limiting culinary water use to culinary purposes and (2) the district filed a certified copy of the board minutes reflecting enactment of the policy. Premier's plain-language interpretation of the ordinance is the correct one.

¶16 Under Weber County Code section 106-4-2(m), secondary water must be provided in a subdivision within an existing water district only "*if* such water district or company files or has filed a written statement with the Weber County Planning Division" restricting its water to culinary purposes and has filed a certified copy of board meeting minutes showing the enactment of such a policy. (Emphasis added.) "Words such as . . . 'if' are words of condition." *McArthur v. State Farm Mutual Auto. Ins. Co.*, 2012 UT 22, ¶ 32, 274 P.3d 981 (cleaned up). And following the word "if" in section 106-4-2(m) are two explicit conditions: (1) the water district has a policy in place restricting its water to culinary uses and (2) the district files a certified copy of the district's board meeting minutes reflecting its adoption of the policy. It is not necessary to look beyond these conditions as neither are met here. Far from having a policy restricting water to culinary uses, the Water District allows culinary water to be used for secondary purposes, albeit on a limited basis. And there is no record evidence indicating the Water District ever filed certified board meeting minutes showing the adoption of such a policy.[4] In the absence of these conditions, the ordinance does not require Premier to provide secondary water to Silver Summit.

¶17 To avoid this result, the Lot Owners argue that while the Water District may not have a formal policy limiting culinary

---

4. On appeal, the Lot Owners concede that the Water District has not filed such a statement.

water use, it has a de facto policy that nonetheless satisfies section 106-4-2(m). According to the Lot Owners, the Water District's individual exchange agreements with customers limit the amount of culinary water that may be used for secondary purposes. And they argue the Water District's culinary water use is restricted as a matter of law through the state engineer's supervision of water usage across Utah. The Lot Owners argue "it no longer matters for purposes of the [o]rdinances whether the [Water] District itself restricts water use" because "it is in fact restricted." But based on the plain language of section 106-4-2(m), it matters a great deal whether the Water District itself restricts culinary water use. The suggestion of a de facto policy limiting culinary water being sufficient under section 106-4-2(m) contradicts the very language of the section, which explicitly requires a written policy limiting the use of culinary water, filed with Weber County, accompanied by certified board meeting minutes. Because it contradicts the text of the ordinance, the Lot Owners' interpretation is not reasonable and does not create ambiguity capable of overcoming the ordinance's plain language. *See Wilkerson*, 2020 UT App 160, ¶ 11.

¶18    To further muddy the waters, the Lot Owners assert that section 106-4-2(m) must be read in light of the purpose and context of the Weber County Code's subdivision requirements as a whole. The Lot Owners note the purpose of these requirements is to facilitate "buildable lots," which would naturally include secondary water systems, and that this court should not put "form over substance" to conclude otherwise. While it is "well settled that when faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose" of lawmakers, it is also well settled that "the best evidence" of this intent is "the plain language of the statute itself." *Marion Energy*, 2011 UT 50, ¶ 14 (cleaned up). The plain language of section 106-4-2(m) indicates an intent to require secondary water infrastructure in a subdivision only if two explicit conditions are met. Because the Water District does not meet these explicit conditions, Premier was not required to provide secondary water

to Silver Summit.[5] Thus, the district court erred in granting partial summary judgment to the Lot Owners on their claim to enforce the ordinance against Premier.

CONCLUSION

¶19 By its plain language, the Weber County Code does not require Premier to provide secondary water to Silver Summit. The district court erred in granting partial summary judgment to the Lot Owners on their claim. Accordingly, we reverse and remand the matter for further proceedings.

———————

5. The Lot Owners also argue that the Specs support the conclusion that secondary water is a required subdivision improvement. The Weber County Code required all subdivision improvements to "comply with the specifications and standards contained" in the Specs. Weber County Code § 106-4-1(b)(2019). The Specs state that a "secondary water system shall be considered as a required subdivision improvement and shall be under the same construction guarantees, release of funds procedures, and acceptance as the regular subdivision improvements." Weber County, Public Works Standards and Technical Specifications, section 1.17.05 (1982). But the Specs are not an independent mandate for developers and apply only when an improvement is required by the Weber County Code. Section 106-4-2(m) did not require Premier to provide secondary water as an improvement, so the Specs do not apply here.