2024 UT App 83

## THE UTAH COURT OF APPEALS

SPRINGDALE LODGING, LLC,
Appellant,

*v.*

TOWN OF SPRINGDALE,
Appellee.

Opinion
No. 20220373-CA
Filed May 31, 2024

Fifth District Court, St. George Department
The Honorable Eric A. Ludlow
No. 190500268

Daniel J. McDonald and Kyle C. Fielding,
Attorneys for Appellant

V. Lowry Snow, J. Gregory Hardman, and
Victoria Carlton, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

ORME, Judge:

¶1　Springdale Lodging, LLC dba Majestic View Lodge
(Majestic View), submitted an application (the Application) to the
Town of Springdale (Springdale) to rezone its property.
Following public hearings before Springdale's planning
commission and town council, the Application was denied.
Majestic View sought judicial review of the denial. The district
court ultimately granted summary judgment in Springdale's
favor, denied Majestic View's cross-motion for summary
judgment, and dismissed the case.

¶2　On appeal, Majestic View argues that the court erred in
concluding that Utah Code section 10-9a-801(8)(a) applied to this

case, resulting in the exclusion of an affidavit by Majestic View's attorney (Attorney). Because we agree that the court erred in applying that statute, and because Attorney's affidavit created a genuine issue of material fact regarding whether Springdale's denial of the Application was procedurally proper, we reverse the court's summary judgment rulings and remand for further proceedings consistent with this opinion.

BACKGROUND

¶3     Springdale, located at the south entrance of Zion National Park, describes itself as a town with "a unique village atmosphere and character." Springdale adopted a general plan[1] that "emphasizes the goal to preserve [its] small town character and village scale." To that end, the general plan encourages, in relevant part, "boutique hotels, bed and breakfasts, and other similar lodging establishments that help promote the village atmosphere and small-town scale." The general plan also embraces the policy of, "[t]o the greatest extent possible, avoid[ing] rezoning properties from residential to commercial." Additionally, section 10-3-2(A) of the Springdale Town Code (the Town Code) provides that the zone map should not be amended "except to promote more fully the objectives and purposes of this title and the general plan, to correct manifest errors, or to accommodate substantial changes in conditions."

¶4     Majestic View owns a 2.5-acre property in the southern end of Springdale. Historically, the property was used as a

---

1. A "general plan" is "a document that a municipality adopts that sets forth general guidelines for proposed future development of the land within the municipality." Utah Code Ann. § 10-9a-103(17) (LexisNexis Supp. 2023) (quotation simplified). *See generally id.* § 10-9a-401(1) (requiring municipalities to adopt a general plan).

single-family residence and has been zoned as "Valley Residential" since 1992. The purpose of "Valley Residential" zoning "is to harmoniously combine residential uses with agricultural uses," and it "reflects the historical open farm development of [Springdale] with residences surrounded by cultivated fields."

¶5    In January 2019, Majestic View submitted the Application seeking to change its property's zoning from "Valley Residential" to "Valley Commercial" "to allow for a hotel, retail space, rental housing, and a welcome center on the Property." Majestic View "also expressed an interest in developing affordable housing" on part of the property. Some two weeks later, Springdale's planning commission considered the Application at a public hearing. At the hearing, Attorney, an engineer, and certain other representatives appeared on Majestic View's behalf. Attorney and the engineer answered the planning commission's questions about the Application, and Attorney also answered a question posed by a member of the public. The record of the proceedings Springdale later submitted to the district court did not indicate that Attorney or the engineer requested more time to speak about the Application at the hearing. After expressing several concerns about the requested zone change, the planning commission unanimously voted to recommend that the Application be denied.

¶6    In February, Springdale's town council considered the Application at a public hearing. Less than half an hour prior to the hearing, Majestic View submitted a new concept plan for its requested zone change. According to the hearing's minutes, after appearing before the planning commission, Majestic View believed it "better understood [the planning commission's] concerns and altered the affordable housing component of the plan. In exchange [it] wanted to revamp the Majestic View Lodge . . . and consolidate the restaurant and gift shop to add additional lodging units" that "would subsidize the affordable housing." Due to the late submission, the town council declined to consider

the revised concept plan at the February hearing. The minutes indicate that Springdale's director of community development said that the town council "could review a revised plan under the current request, or start again with another zone change application." The council also expressed its intent to deny the Application, but it tabled the issue so that legal counsel could "draft findings to deny the request."

¶7 In March, the town council again considered the Application at a public hearing. The council informed Attorney that it would consider only the original concept plan because the planning commission had not reviewed the revised plan and because the changes were substantial enough to require submission of an entirely new application. Attorney replied that "he wanted to preserve his rights under the pending Application" and asked that the council allow Majestic View to amend the Application so that the planning commission could review the revised concept plan. After Springdale's mayor responded that the planning commission would review the revised concept plan only if it was included in a new application, Attorney indicated his intent to appeal the denial of the Application. Attorney also raised concerns about procedure and process, stating that "there were procedural differences in how the Council considered agenda items" and that he "felt he was denied the opportunity to speak individually with Commission or Council members, or present different aspects of his proposal." In light of these allegations, the town council decided to again seek legal counsel and once more tabled its consideration of the Application.

¶8 In April, at another public hearing, the town council voted unanimously to deny the Application. The following month, Majestic View initiated the current lawsuit against Springdale,[2]

---

2. The complaint also named Springdale's mayor, its director of community development, a town council member, and a planning

(continued…)

alleging several causes of action. The district court dismissed all of Majestic View's claims except for its request for judicial review of the Application's denial, brought pursuant to the Municipal Land Use, Development, and Management Act (MLUDMA), Utah Code Ann. §§ 10-9a-101 to -905 (LexisNexis 2022 & Supp. 2023).[3]

¶9    Both parties filed motions for summary judgment on the remaining cause of action.[4] In addition to the parties' arguments

---

commissioner as defendants in their individual capacities, but the district court soon dismissed them as defendants, leaving Springdale as the sole defendant. Majestic View does not appeal the dismissal of the individual defendants.

3. Because the applicable provisions of the Utah Code in effect at the relevant time do not differ from those in the most recent printed version of the code in any way material to this appeal, unless otherwise indicated we cite the most recent printed version. But because the relevant provisions of the Town Code have since been materially altered, any reference to the Town Code is to the version in effect in 2019.

4. Springdale explains that because it and Majestic View's prior counsel "agreed to resolve the administrative review claim by filing appellate-style briefs, focusing their arguments on the administrative record that was transmitted to the district court," it submitted its argument in the form of a brief that recited "facts from the record" rather than undisputed facts. Around that time, Majestic View retained new counsel who, instead of a brief, submitted a motion for summary judgment making the same arguments it made in its memorandum opposing Springdale's "brief." For simplicity, we refer to both filings as motions for summary judgment. Indeed, in light of our holding in Part I below that the court's consideration was not limited to the record

(continued…)

concerning the Application's denial, Majestic View contended, among other things, that the 317-page record Springdale submitted to the court was incomplete because it did not contain transcripts of the public hearings and that Springdale violated MLUDMA and the Town Code when it did not provide Majestic View "a reasonable opportunity to be heard" and when it did not consider the revised concept plan.

¶10    Majestic View's motion for summary judgment included an affidavit from Attorney. In the affidavit, Attorney stated that prior to the public hearing before the planning commission, Springdale's director of community development told him that Majestic View would need to include only "a simple concept plan of the intended development with a simple illustration" in the Application and cautioned against including too much detail because "that might distract the planning commission and town council from the zone change itself." Attorney alleged that the director also told him that Majestic View would have "ample opportunity to adjust or modify the concept plan through the formal processes provided by" Springdale.

¶11    Attorney stated that per Springdale's written rules of procedure for public hearings (the Public Hearing Policy), he and the engineer were not permitted "to speak unless spoken to." Attorney alleged he told the director after the commission hearing that he had not been allowed to "talk, modify, adjust or even receive feedback from the planning commission." The director allegedly told Attorney the commission was "following their procedure," which included inviting him to speak "during the Q&A section."

¶12    Attorney stated that the Public Hearing Policy was also in effect at public hearings before the town council. He alleged that

Springdale provided, Springdale's "brief" is properly treated as a motion for summary judgment.

although the Public Hearing Policy allowed for a "[s]ummary explanation and presentation of hearing item" by Springdale, no equivalent allotment of time was provided to him to present the Application. Rather, he was not allowed "to speak unless spoken to." He also asserted that he was precluded from presenting his visual aids or the revised concept plan at the February public hearing before the town council. And contrary to the minutes from the March hearing, he asserted that he "was not 'invited to speak' about the merits" of the Application but was instead limited to voicing his "objections to the process." Attorney stated that, at the April hearing, he "was not allowed to speak or present anything to the Town Council." He asserted that as a result, he was never given the opportunity at any of the hearings to address, among other things, whether the zone change was needed "to correct manifest errors" or "to accommodate substantial changes in conditions" under section 10-3-2(A) of the Town Code.

¶13 The district court resolved the parties' summary judgment motions in Springdale's favor. First, applying the standard set forth in *Petersen v. Riverton City*, 2010 UT 58, 243 P.3d 1261, and *Morra v. Grand County*, 2010 UT 21, 230 P.3d 1022, the court ruled that "[t]he administrative record reflects that the denial by the Town Council was in the interest of the general welfare and served a legitimate land use purpose." The court, accordingly, declined to set aside Springdale's decision to deny the Application. The court did not determine whether, in so doing, Springdale acted "properly," "contrary to state or federal law," or "consistent with" MLUDMA. *See* Utah Code Ann. § 10-9a-801(3)(a) (LexisNexis 2022). Also, in reaching its decision, the court did not consider Attorney's affidavit because the court believed it was precluded under Utah Code section 10-9a-801(8)(a) from considering evidence "outside of the administrative record." Instead, the court based its decision on what "[t]he administrative record reflect[ed]." And regarding Majestic View's challenge to the sufficiency of the record, the

court ruled that the lack of transcripts of the public hearings did not render the record inadequate because Utah law requires submission of transcripts only "if available," which was not the case here because "Springdale does not prepare transcripts of zone-change proceedings, and it did not prepare one in this case."

¶14    Accordingly, the district court granted Springdale's motion for summary judgment and denied Majestic View's motion for summary judgment. This appeal followed.


ISSUE AND STANDARD OF REVIEW

¶15    Majestic View challenges the district court's summary judgment rulings. "We review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness." *R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 13, 525 P.3d 100 (quotation simplified). In so doing, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (quotation simplified).


ANALYSIS

¶16    Majestic View raises several challenges to the district court's summary judgment rulings. We first consider its argument that the court incorrectly excluded Attorney's affidavit under Utah Code section 10-9a-801(8)(a) when it considered the parties' summary judgment motions. Next, we turn to Majestic View's argument that the Public Hearing Policy deprived it of a reasonable opportunity to be heard as required by MLUDMA and the Town Code. We ultimately agree with Majestic View's position on both these arguments and accordingly reverse the court's grant of summary judgment to Springdale.

¶17 But our consideration of Majestic View's arguments does not end there. Because some of the other issues it raises on appeal are likely to arise again on remand, we consider those arguments as well. *See State v. Ogden*, 2018 UT 8, ¶ 49, 416 P.3d 1132 ("Although it is unnecessary to our decision, we retain the authority to reach issues when we believe our analysis could prove helpful on remand."). Specifically, we address Majestic View's claims that Springdale wrongfully refused its request to supplement the Application with the revised concept plan and that the district court erred when it ruled that Springdale was not required to include transcripts of the proceedings in the record it provided the court.

## I. Attorney's Affidavit

¶18 Majestic View argues that the district court erroneously excluded Attorney's affidavit from its consideration of the motions for summary judgment for being "outside of the administrative record" pursuant to Utah Code section 10-9a-801(8)(a). Majestic View contends that section 801(8)(a) applies only to administrative decisions, whereas Springdale's denial of the Application's requested zone change constituted a legislative action that carries no similar limitation under MLUDMA. We agree.

¶19 Section 801(8)(a) provides,

> (i) If there is a record, the district court's review is limited to the record provided by the land use authority or appeal authority,[5] as the case may be.

---

5. *See* Utah Code Ann. § 10-9a-801(7)(a) (LexisNexis 2022) ("The land use authority or appeal authority, as the case may be, shall transmit to the reviewing court the record of the proceedings of

(continued…)

> (ii) The court may not accept or consider any evidence outside the record of the land use authority or appeal authority, as the case may be, unless that evidence was offered to the land use authority or appeal authority, respectively, and the court determines that the evidence was improperly excluded.

Utah Code Ann. § 10-9a-801(8)(a) (LexisNexis 2022). The court is permitted to "call witnesses and take evidence" only in cases where "there is no record." *Id.* § 10-9a-801(8)(b).

¶20 Under its plain terms, section 801(8)(a)'s limitations apply specifically "to the record provided by the land use authority or appeal authority." *Id.* § 10-9a-801(8)(a). As defined by MLUDMA, land use authorities and appeal authorities are tasked with deciding "a land use application" either in the first instance or on appeal, *id.* § 10-9a-103(5), (30)(a) (Supp. 2023), that applicants submit to obtain "a land use decision," *id.* § 10-9a-103(29)(a)(ii). A land use decision is "an *administrative decision*." *Id.* § 10-9a-103(31) (emphasis added). Notably, MLUDMA states that land use applications are not "applications to enact, amend, or repeal a land use regulation," *id.* § 10-9a-103(29)(b), which are defined as "*legislative decision[s]* . . . that govern[] the use or development of land," including "the adoption or amendment of a zoning map or the text of the zoning code," *id.* § 10-9a-103(33)(a)–(b) (emphasis added). MLUDMA also provides that a land use regulation is distinct from "a land use decision of the legislative body acting as the *land use authority*." *Id.* § 10-9a-103(33)(c)(i) (emphasis added). *See id.* § 10-9a-501(1) ("Only a legislative body, as the body authorized to weigh policy considerations, may enact a land use

---

the land use authority or appeal authority, including the minutes, findings, orders, and, if available, a true and correct transcript of the proceedings.").

regulation."); *id.* § 10-9a-503(1) (2022) (stating that "[o]nly a legislative body may amend" land use regulations).

¶21 Here, the Application specifically sought the rezoning of Majestic View's property from "Valley Residential" to "Valley Commercial." This was fundamentally a legislative decision. As an initial matter, MLUDMA expressly states that "the adoption or amendment of a zoning map or the text of the zoning code" is "a legislative decision." *Id.* § 10-9a-103(33)(a)–(b). Furthermore, the Utah Supreme Court has "consistently held that the enactment and amendment of zoning ordinances is fundamentally a legislative act." *Petersen v. Riverton City*, 2010 UT 58, ¶ 10, 243 P.3d 1261 (quotation simplified). This likewise extends to decisions made in response to applications to rezone property. *Id.* ¶ 1 ("[T]he decision to grant or deny an application for a zoning change is a legislative decision."). Indeed, site-specific zoning decisions satisfy the "chief hallmarks of legislative action"—"the adoption of rules of general applicability and the weighing of broad, competing policy considerations."[6] *Krejci v. City of Saratoga Springs*, 2013 UT 74, ¶ 31, 322 P.3d 662 (quotation simplified). Thus, in deciding whether to grant or deny the Application, the town council was acting in a legislative capacity—not as a land use authority or appeal authority, which are charged with making administrative decisions. *See* Utah Code Ann. § 10-9a-103(29)(a)(ii), (31).

---

6. Although "site-specific zoning decisions affect only one piece of property" and are therefore "not generally applicable in the sense that they do not result in the announcement of a rule that applies generally to other pieces of property," they are nonetheless "generally applicable in a more important sense, in that they apply to all present and future parties that meet its terms." *Krejci v. City of Saratoga Springs*, 2013 UT 74, ¶ 32, 322 P.3d 662 (quotation simplified).

¶22 Because section 801(8)(a) addresses only "the record provided by the land use authority or appeal authority," *id.* § 10-9a-801(8)(a)(i), its limitation on the district court's review is not applicable to cases such as this one in which the deciding body is not acting in either of those capacities,[7] *see id.* § 10-9a-103(33)(c)(i) (stating that a land use regulation "does not include . . . a land use decision of the legislative body acting as the land use authority"). In other words, in this case there is no "record provided by the land use authority or appeal authority" to which the district court's review would be limited under section 801(8)(a)—and thus that section does not apply here. The district court therefore erred when it held that it was statutorily required by section 801(8)(a) to exclude Attorney's affidavit from

---

7. Springdale conceded as much during oral argument before this court. In any event, in its brief on appeal, Springdale's argument that section 801(8)(a) applies to zoning decisions is entirely reliant on our Supreme Court's decision in *Petersen v. Riverton City*, 2010 UT 58, 243 P.3d 1261. In that case, the appellants challenged the district court's summary judgment ruling upholding Riverton City's denial of their application to rezone their property. *Id.* ¶ 1. Among other things, the appellants argued that the district court abused its discretion when it denied their motion to conduct additional discovery pursuant to then-rule 56(f) of the Utah Rules of Civil Procedure, now-rule 56(d). *Id.* ¶ 25. Our Supreme Court held that the district court's denial was not an abuse of discretion because "further discovery would have been meaningless when the court could not have considered it" under section 801(8)(a). *Id.* ¶ 27. But the Court applied section 801(8)(a) pursuant to the appellants' filing of a "Petition for Review of a *Land Use Decision*," *id.* ¶ 26 (emphasis added)—not a land use regulation. Indeed, appellants argued only that section 801(8)(a) did not apply to constitutional challenges. *Id.* ¶ 27. Thus, the Court in *Petersen* was not asked to consider—and did not rule on—the issue presented in this appeal.

its consideration when deciding the parties' motions for summary judgment.

¶23   Springdale contends that notwithstanding the issue of admissibility under section 801(8)(a), Attorney's affidavit "was unnecessary" because "Majestic View's only right under state and federal laws is to a public hearing that includes allotted time for public comment." Springdale thus appears to be arguing that the affidavit, if accepted by the district court, would not have precluded summary judgment because it did not raise an issue of material fact. *See* Utah R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."). We consider this argument in conjunction with Majestic View's argument addressed in Part II.

## II. Hearing Requirements

¶24   MLUDMA directs that in reviewing a challenged land use regulation, a district court "shall"

> (i) presume that a land use regulation properly enacted under the authority of this chapter is valid; and
>
> (ii) determine only whether:
>
>> (A) the land use regulation is expressly preempted by, or was enacted contrary to, state or federal law; and
>>
>> (B) it is reasonably debatable that the land use regulation is consistent with this chapter.

Utah Code Ann. § 10-9a-801(3)(a) (LexisNexis 2022).

¶25    Thus, a district court's inquiry is twofold: procedural and substantive. First, the court must determine whether a land use regulation was "properly enacted." *Id.* § 10-9a-801(3)(a)(i). "Failure to strictly follow the statutory requirements in enacting the ordinance renders it invalid." *Hatch v. Boulder Town Council*, 2001 UT App 55, ¶ 7, 21 P.3d 245 (quotation simplified). *See also Melville v. Salt Lake County*, 536 P.2d 133, 134 (Utah 1975) (stating that further inquiry by the reviewing court is not necessary if the challenged legislative action "was not validly enacted"). This is because "the authority to regulate land use through zoning ordinances is conferred on municipalities by the state through enabling statutes" and, consequently, "cities must strictly comply with the statute delegating them the authority to act." *Hatch*, 2001 UT App 55, ¶ 7 (quotation simplified). *See State v. Hutchinson*, 624 P.2d 1116, 1126 (Utah 1980) ("Specific grants of authority may serve to limit the means available under the general welfare clause, for some limitation may be imposed on the exercise of power by directing the use of power in a particular manner.").

¶26    Second, if the answer to the first question is in the affirmative, the court applies a presumption of validity and its review of a land use regulation's substance is limited to whether "(A) the land use regulation is expressly preempted by, or was enacted contrary to, state or federal law" and "(B) it is reasonably debatable that the land use regulation is consistent with [MLUDMA]." Utah Code Ann. § 10-9a-801(3)(a)(ii). The "reasonably debatable standard" set forth in subsection 801(3)(a)(ii)(B) is "highly deferential." *Petersen v. Riverton City*, 2010 UT 58, ¶ 10, 243 P.3d 1261.[8] This is because land use

_____

8. It is worth noting that since our Supreme Court's decision in *Petersen*, our Legislature has amended section 801(3)(a) to add that a land use regulation is presumed valid if "properly enacted" and to include as part of the district court's review whether "the land

(continued…)

regulations, including "the enactment or amendment of zoning ordinances," are "fundamentally a legislative act," and as such, a reviewing court is to "avoid substituting its judgment for that of the legislative body of the municipality." *Id.* (quotation simplified).

¶27 Majestic View's argument is focused on the first inquiry—whether Springdale's legislative action of denying the Application was "properly enacted." Utah Code Ann. § 10-9a-801(3)(a)(i). Specifically, Majestic View contends that Springdale "did not strictly comply with the processes required by [MLUDMA] and the town code" because it did not provide Majestic View a reasonable opportunity to be heard at the public hearings.[9] Majestic View asserts that the town council's and the planning commission's adherence to the Public Hearing Policy deprived it of an "opportunity to present or speak unless asked a question" and further complains that at the public hearings before the town council, it "was not even allowed to put on the Town's TV screens the visual aids or the revised concept plan that it prepared in response to the planning commission's concerns." It is important to note that this argument is not a constitutional procedural due process claim. Rather, it is a challenge brought

---

use regulation is expressly preempted by, or was enacted contrary to, state or federal law." *Compare* Utah Code Ann. § 10-9a-801(3)(a) (LexisNexis 2022), *with id.* § 10-9a-801(3) (2007). *See also Petersen*, 2010 UT 58, ¶ 9 (quoting the 2007 version of the statute).

9. Relatedly, Majestic View also argues that the district court erred by applying only the "reasonably debatable" standard as articulated in *Petersen* without considering the subsequent amendments our Legislature made since that opinion was issued. *See supra* note 8. On remand, if necessary, the court should address all the inquiries set forth in section 801(3)(a), as described above.

under section 801(3)(a)(i) that Springdale's legislative action in denying the Application was not proper under MLUDMA.

¶28 MLUDMA directs that "[a] legislative body may not make any amendment [to a land use regulation] unless the legislative body first submits the amendment to the planning commission for the planning commission's recommendation." *Id.* § 10-9a-503(2). *See generally id.* § 10-9a-503(1) (detailing the amendments a legislative body may make). In considering a proposed adoption of or change to a land use regulation, the planning commission is required to "hold a public hearing," *id.* § 10-9a-502(1)(b), which is "a hearing at which members of the public are provided a reasonable opportunity to comment on the subject of the hearing," *id.* § 10-9a-103(52) (Supp. 2023). Although Majestic View premises part of its argument on these provisions, because reversal is warranted based on potential violations of the Town Code, we need not decide whether Majestic View was a "member[] of the public" entitled to "a reasonable opportunity to comment" at the public hearings addressing the Application.[10] *Id.*

¶29 Section 10-3-2(I) of the Town Code directs the town council, upon receipt of the planning commission's recommendation on a proposed zoning amendment, to likewise

---

10. MLUDMA also recognizes "the right of each . . . participant to be heard in each public hearing on a contested application" by requiring the planning commission to recommend to the legislative body application processes that achieve that end. Utah Code Ann. § 10-9a-302(1)(e)(ii) (LexisNexis 2022). But this right appears to pertain more generally to the application process and not specifically to a public hearing. In any event, as noted above, we need not decide this particular issue.

hold a public hearing.[11] Sections 10-3-2(F) and 10-3-2(I) of the Town Code state, with our emphasis, that "*interested parties and citizens* shall have an *opportunity to be heard*" at the public hearings both before the planning commission and the town council. Thus, in addition to members of the public, the Town Code specifically affords interested parties—including Majestic View in this case—the "opportunity to be heard."

¶30    "When interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863

---

11. This differs from MLUDMA, which requires the legislative body to hold only a "public meeting" when considering "each proposed land use regulation that the planning commission recommends." Utah Code Ann. § 10-9a-502(2)(a)–(b) (LexisNexis 2022). *See id.* § 10-9a-103(53) (Supp. 2023) (defining a "[p]ublic meeting" as "a meeting that is required to be open to the public under Title 52, Chapter 4, Open and Public Meetings Act"). Ultimately, this has no effect on our decision. MLUDMA expressly requires that a public hearing be held prior to the adoption or modification of any land use regulation. *See id.* §§ 10-9a-205(1), -502(1)(b) (2022 & Supp. 2023); *Wallingford v. Moab City*, 2020 UT App 12, ¶ 20, 459 P.3d 1039, *cert. denied*, 466 P.3d 1073 (Utah 2020). Thus, regardless of whether the public hearing was held before the planning commission or the town council, a defective public hearing would render a land use regulation improperly enacted. Furthermore, Town Code section 10-3-2(I)'s provision that citizens and interested parties have an additional opportunity to be heard by the town council does not prevent the public meeting from being "open to the public," as required by MLUDMA. Utah Code Ann. § 10-9a-103(53). *See Wallingford*, 2020 UT App 12, ¶ 13 (comparing public hearings with public meetings).

(quotation simplified). "Utah courts interpret municipal and county ordinances and resolutions according to our well-settled rules of statutory interpretation and construction." *Park City Premier Props., LLC v. Silver Summit Estates*, 2023 UT App 121, ¶ 14, 538 P.3d 628 (quotation simplified). And, here, the Town Code's references to the opportunity of an interested party "to be heard" are determinative.

¶31   An opportunity to be heard includes a party's ability to advocate during the proceeding—not merely to provide information upon request. Although, as already emphasized, this is not a constitutional due process case, that area of the law is instructive here. The opportunity to be heard is a crucial aspect of a constitutional procedural due process claim. "At a minimum, due process requires timely and adequate notice and an opportunity to be heard in a meaningful way." *State v. Hegbloom*, 2014 UT App 213, ¶ 13, 362 P.3d 921 (quotation simplified), *cert. denied*, 343 P.3d 708 (Utah 2015). It "includes the opportunity to present evidence and argument on that issue before decision." *Id.* (quotation simplified). "Mere notice is an empty gesture if it is not accompanied by a meaningful chance to make your case." *In re adoption of B.Y.*, 2015 UT 67, ¶ 23, 356 P.3d 1215. This is not to suggest that the opportunity to be heard in this context must fully comply with the requirements of its constitutional due process counterpart, but the prevalent use of the term "opportunity to be heard" in that well-known context supports the notion that the common understanding of the term involves the opportunity to make one's case by presenting information and argument in some meaningful way.

¶32   This is consistent with Utah case law stating that when exercising its legislative authority in the zoning context, it is both the "privilege and obligation" of the legislative body "to gather available pertinent information from all possible sources and give consideration to it in making [its] determination." *Harmon City, Inc. v. Draper City*, 2000 UT App 31, ¶ 27, 997 P.2d 321 (quotation

simplified). Thus, the legislative body must take into consideration both arguments for and against a proposed land use regulation. This would naturally include consideration of meaningful argument by the party seeking the zone change. *Cf. Call v. City of West Jordan*, 727 P.2d 180, 183 (Utah 1986) ("In requiring a public hearing, our legislature contemplated that interested parties would have an opportunity to give their views, pro and con, regarding a specific legislative proposal, and thereby aid the municipal government in making its land use decisions."); *Petersen*, 2010 UT 58, ¶ 15 (stating that under the reasonably debatable standard, "[t]he decision must simply be reasonably debatable *after consideration of all the evidence in favor of and against the proposed change*") (emphasis added).

¶33    Springdale argues that "the Town Code required nothing more than a 'public hearing' at which 'interested parties and citizens shall have an opportunity to be heard,'" which it contends was exactly what Majestic View was provided.[12] Specifically, Springdale asserts that "the Public Hearing Policy does not chill speech" and "[t]he administrative record reflects that Majestic View's representatives spoke as much as they desired" at the public meetings. Indeed, according to Springdale, "the record reflects the opposite of Majestic View's claim of a 'speak-to-when-spoken-to' Town policy" because Attorney "was given the opportunity to attend and speak at public hearings before the planning commission and town council pursuant to Utah Code section 10-9a-205 and Town Code 10-3-2(F), (I)."

---

12. Springdale does not assert that compliance with the public hearing provisions of the Town Code falls outside the scope of the section 801(3)(a)(i) analysis. We thus do not address this question here and instead address Majestic View's argument in light of the parties' apparent agreement that the Town Code is relevant.

Springdale also suggests that Majestic View could have spoken during the public comment period of the hearing.

¶34 But Attorney's affidavit contradicts these assertions. If Majestic View was, indeed, able to present its case during the public hearings, then the Town Code's requirement would have been satisfied. But if, as the affidavit claims, Majestic View was limited to presenting only aspects of its case that were responsive to questions it was asked, resulting in it not being able to make meaningful argument in support of the Application, then it is unlikely that it was afforded a sufficient opportunity to be heard as required by the Town Code. Accordingly, a genuine dispute of material fact exists, and the grant of summary judgment to Springdale was improper. *See* Utah R. Civ. P. 56(a).

¶35 For these reasons, we reverse the district court's grant of summary judgment in Springdale's favor.[13] Should Attorney's

---

13. Majestic View also contends that the district court erroneously denied its motion for summary judgment, in which it made the same arguments it made in its memorandum opposing Springdale's motion for summary judgment. Majestic View bases this argument largely on the lack of an affidavit or other evidence from Springdale countering Attorney's affidavit. *See Home Builders Ass'n v. City of N. Logan*, 1999 UT 63, ¶ 6, 983 P.2d 561 ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.") (quotation simplified). We reverse both the district court's summary judgment rulings based on the court's erroneous conclusion that section 801(8)(a) precluded consideration of any material outside the record supplied by

(continued…)

affidavit or other admissible evidence outside the current record be put before the court in a future motion for summary judgment, all those materials should be considered.

### III. Other Arguments

¶36 Although we ultimately agree with Majestic View's position concerning Attorney's affidavit and the right-to-be-heard issues and reverse the district court's grant of summary judgment to Springdale on those grounds, we proceed to address some of the other arguments Majestic View makes on appeal because they are likely to arise again as this matter is litigated. *See State v. Ogden*, 2018 UT 8, ¶ 49, 416 P.3d 1132 ("Although it is unnecessary to our decision, we retain the authority to reach issues when we believe our analysis could prove helpful on remand."). Specifically, we address Majestic View's arguments that Springdale wrongfully refused its request to supplement the Application with the revised concept plan and that the district court erred in ruling that under Utah Code section 10-9a-801(7)(a), Springdale was not required to include transcripts of the proceedings in the record it provided the district court.

### A.    Request to Supplement the Application

¶37 Majestic View asserts that by not allowing it to supplement the Application with the revised concept plan, Springdale failed in its "responsibility of advising itself of all pertinent facts as a basis for determining what is in the public interest in that regard."

---

Springdale. But this does not mean that Majestic View's motion should have been granted. The district court's erroneous conclusion would have likewise deprived Springdale of the opportunity to present extra-record evidence to counter Attorney's affidavit. As such, Springdale would be entitled to such an opportunity should the motion for summary judgment be renewed.

*Harmon City, Inc. v. Draper City*, 2000 UT App 31, ¶ 27, 997 P.2d 321 (quotation simplified). *See generally id.* (stating that when acting in a legislative capacity, a legislative body is obligated "to gather available pertinent information from all possible sources and give consideration to it in making [its] determination") (quotation simplified). Majestic View asserts that the supplemental materials were simply responsive to the concerns raised by the planning commission and that they "did not substantially deviate from the original application materials."

¶38   Relatedly, Majestic View contends that instead of applying the more global directive of section 10-3-2(A) of the Town Code that the zone map should not be amended "except to promote more fully the objectives and purposes of this title and the general plan, to correct manifest errors, or to accommodate substantial changes in conditions," the planning commission raised very detailed concerns that were not appropriate at that phase. Specifically, Majestic View points to the planning commission's concerns that, pursuant to the Town Code, should be addressed in the later design/development review phase—including traffic, light pollution, visual impact, and noise. Majestic View asserts that by raising such concerns, its legislative zoning request was essentially turned "into a minutiae laden administrative site plan or subdivision/plat-type review—an administrative 'land use decision' instead of a legislative 'land use regulation.'"

¶39   But zoning decisions involve several considerations, "such as the location of businesses, schools, roads and traffic conditions, growth in population and housing, the capacity of utilities, the existing classification of surrounding property, and the effect that the proposed reclassification may have on these things and upon the general orderly development." *Gayland v. Salt Lake County*, 358 P.2d 633, 636 (Utah 1961). Such considerations are relevant to section 10-3-2(A)'s inquiry of whether the requested zone change "promote[s] more fully the objectives and purposes of this title and the general plan." In fact, the general plan encourages, in

relevant part, "boutique hotels, bed and breakfasts, and other similar lodging establishments that help promote the village atmosphere and small-town scale." Thus, it was not inappropriate for the planning commission to raise questions about specific details at the public hearing. *See generally Potter v. South Salt Lake City*, 2018 UT 21, ¶ 40, 422 P.3d 803 ("Public hearings are unpredictable. City councilmembers and public commenters often try to reframe a debate in ways that favor their position.").

¶40   On the other hand, submission of materials responsive to such detailed and unexpected concerns does not necessarily mandate an entirely new application process. Section 10-3-2(A) of the Town Code establishes a broad, general inquiry. Where, at the design/development or any other subsequent phase, certain changes to specific details of a plan might affect the entire application, section 10-3-2(A) is more forgiving. Additionally, section 10-3-2(I) provides, with our emphasis, that following the planning commission's recommendation, "the town council may adopt the zoning ordinance as proposed, *amend the zoning ordinance and adopt or reject the zoning ordinance as amended*, reject the proposed ordinance or postpose a decision until a specified date for a specified reason." *See also* Utah Code Ann. § 10-9a-502(2)(b) (LexisNexis 2022) (stating that following receipt of the planning commission's recommendation, "the legislative body may adopt or reject the land use regulation . . . after making any revision the legislative body considers appropriate"). Thus, to the extent the supplemental materials were responsive to questions or concerns raised at the public hearing, Majestic View still sought the same zone change (from "Valley Residential" to "Valley Commercial"), and the changes did not raise entirely new policy considerations from that of the original Application. Thus, Majestic View should have been allowed to present the materials for the town council's consideration without necessitating an entirely new application or remand to the planning commission.

B.      Sufficiency of the Record

¶41    Majestic View argues that the district court "erred when it ruled that Section 10-9a-801(7) was applicable" and when it ruled that, under that section, Springdale was not required to include transcripts of the public hearings in the record it submitted because the transcripts were not "available."

¶42    Utah Code section 10-9a-801(7)(a) provides,

> The land use authority or appeal authority, as the case may be, shall transmit to the reviewing court the record of the proceedings of the land use authority or appeal authority, including the minutes, findings, orders, and, if available, a true and correct transcript of the proceedings.

As with section 801(8)(a), section 801(7)(a) only concerns a "land use authority or appeal authority." And as discussed in Part I, because the town council was not acting in either of those capacities when it denied the Application, but was instead acting in a legislative capacity, section 801(7)(a) does not govern here. The district court thus erred in applying that section to this case.

¶43    Curiously, MLUDMA does not contain a corresponding section regarding submission of the record to the district court for cases seeking judicial review of legislative actions. But, as also discussed in Part I, the district court's review is not limited to considering the record Springdale transmitted. Furthermore, the court's order noted that Springdale did provide Majestic View "with copies of audio recordings of all underlying administrative proceedings." Accordingly, in future proceedings, either party may submit the recordings in support of their argument. And, to the extent they or the district court find it helpful, they may submit transcripts in lieu of recordings in accordance with regular procedure.

CONCLUSION

¶44    The district court erred in limiting its review to the record provided by Springdale, resulting in the exclusion of Attorney's affidavit when it ruled on the parties' summary judgment motions. And because the affidavit creates a genuine issue of material fact, summary judgment in Springdale's favor was not appropriate. We accordingly reverse the court's summary judgment in favor of Springdale and remand for such further proceedings as might be appropriate, consistent with this opinion.

———————